The FIDELITY AND CASUALTY COMPANY OF NEW YORK, a New Hampshire Corporation, Plaintiff-Respondent,

v.

Aubrey L. WRATHER, Kenneth Nanney, d/b/a Nanney Trucking Company, James Robert Pardon and Gary Mason Deem, Defendants,

v.

Aubrey L. WRATHER, Third-Party Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., Third-Party Defendant-Appellant.

No. 12636.

Missouri Court of Appeals, Southern District, Division Three.

May 5, 1983.

Motion for Rehearing or to Transfer Denied May 26, 1983.

**246**

James S. Green, Hux & Green, Sikeston, for plaintiff-respondent.

No appearance for defendant and third-party plaintiff Wrather.

Harold D. Jones, Bock & Jones, New Madrid, for third-party defendant-appellant State Farm Mut. Auto. Ins. Co.

FLANIGAN, Judge.

This appeal by State Farm Mutual Automobile Insurance Company arises out of a declaratory judgment action in which the trial court, sitting without a jury, found that two policies of liability insurance issued to one Wrather afforded coverage to him in the defense of a tort action brought against Wrather and others by one Nanney. One of the policies was issued by State Farm and the other was issued by The Fidelity & Casualty Company of New York ("F & C"). Only State Farm has appealed.

The declaratory judgment action was instituted by plaintiff F & C against defendants Wrather, Nanney, and the drivers of other vehicles involved in a series of collisions. Wrather filed a third-party petition against State Farm. In their respective pleadings F & C, Wrather, and State Farm requested declaratory relief.

In the tort action Nanney's petition sought $10,000 for property damage to Nanney's tractor-trailer unit and $6,000 for the loss of its use. That petition alleged that on June 13, 1980, Nanney's tractor-trailer unit sustained damage in a series of collisions which occurred on Missouri Highway 162 in New Madrid County. Defendants in the tort action were Wrather and the operators of three vehicles. The petition charged that Nanney's damage was caused by the joint and concurrent negligence of all the defendants.

With respect to Wrather, Nanney's petition pleaded that Wrather "carelessly and negligently caused to be burning a large field of wheat stubble and the smoke and ash from the fire was blowing directly northerly across Highway 162, thereby obscuring, blocking and making extremely

hazardous vision and travel upon said highway." The petition also alleged that Wrather "carelessly and negligently caused to be burning in close proximity to a heavily traveled state highway a large wheat field and failed to warn or otherwise advise motorists of the danger," that Wrather "caused to be burned the wheat field at a time when the wind and atmospheric conditions were totally improper," and that Wrather "failed to either sufficiently contain the smoke and fire so as to avoid obscuring the vision of the motorists on Highway 162 or failed to provide warning to motorists of the hazardous and dangerous condition created by the burning wheat field of [Wrather]."

State Farm contends that the trial court erred in finding that the State Farm policy afforded coverage[1] to Wrather in the defense of the tort action for the following reasons: (a) Wrather's conduct was not within the liability coverage afforded by Section I, Coverage A of the State Farm policy set forth marginally,[2] because it constituted "intentional use, and not accidental use of his car"; that conduct consisted of "igniting an old tire, attaching same with a chain to the bumper of his car, and dragging it through the wheat field"; (b) the uncontroverted evidence was that limited visibility on the highway was created by dense dark smoke from burning green vegetation which Wrather had ignited by hand while he was walking and not from the white smoke created by the burning wheat stubble which had been ignited by dragging the burning tire behind the vehicle; (c) any highway hazard created by the conduct of

Wrather in pulling a burning tire behind the vehicle did not have "sufficient causal relationship to the contemplated coverage of the use of the vehicle"; also, an identical result would have occurred whether or not the burning tire was dragged; (d) the trial court found that the black smoke, which had limited visibility on the highway, did not result from the use of the vehicle and on that basis found there was no coverage under the F & C policy because of an applicable exclusion therein; this finding was inconsistent with the finding of coverage under the State Farm policy. None of the foregoing reasons has merit.

■ "Ordinarily the insurer's duty to defend is determined from the policy provisions and the allegations of the petition" [in the tort action]. *Zipkin v. Freeman,* 436 S.W.2d 753, 754[1] (Mo. banc 1968); *Farmers Alliance Mut. Ins. C. v. Reed,* 530 S.W.2d 470, 475[1] (Mo.App.1975). The petition in the tort action "must be looked to for establishment of [the insurer's] obligation to defend under the policy." *Butters v. City of Independence,* 513 S.W.2d 418, 424 (Mo.1974). *Zipkin* also holds, at p. 754, that the insurer "cannot safely ignore actual facts known to it or which could be known from reasonable investigation," that is, "the facts which were known, or should have been reasonably apparent at the commencement of the suit and not the proof made therein or the final result reached." To similar effect see *Schmidt v. Utilities Ins. Co.,* 353 Mo. 213, 182 S.W.2d 181, 184 (Mo. 1944). "When a . . . petition in an action against one to whom a policy of automobile liability insurance has been issued states

1. The judgment of the trial court recites, in part, "that [State Farm] is obligated to defend and has coverage under its policy of liability insurance for the liability and losses pleaded in [Nanney's petition in the tort action]." The brief of State Farm does not differentiate between the "duty to defend" and the "duty to pay a judgment rendered against its insured." For a discussion of the distinction see *U.S. Fid. & Guar. Co. v. Louis A. Roser Co.,* 585 F.2d 932, 936[3] (8th Cir.1978). Since State Farm's brief makes no distinction, this court refrains from making one and expresses no opinion on whether the instant record would have supported one.

2. "SECTION I—LIABILITY—COVERAGE A

We will:
1. pay damages which an insured becomes legally liable to pay because of:
  a. . . .
  b. damage to or destruction of property including loss of its use,
caused by accident resulting from the ownership, maintenance or use of your car; and
2. defend any suit against an insured for such damages with attorneys hired and paid by us. . . ."

different causes of action or theories of recovery against the insured, one of which is within the coverage of the policy and others of which may not be, the insurer is bound to defend with respect to those causes of action which, if proved, would be within the coverage." 7 Am.Jur.2d Auto. Ins. § 392, p. 1150.

The allegations of Nanney's petition, with respect to the conduct of Wrather, have been set forth. Those allegations make no mention of Wrather's "igniting an old tire, attaching same with a chain to the bumper of his car" and dragging it through the wheat field. It is from Wrather's testimony at the trial of the declaratory judgment action that State Farm obtains its description of his conduct. State Farm does not claim, however, that the same information was not available to it before the tort action was filed.

From the tenor of State Farm's brief this court infers that State Farm takes the position that the issue of coverage under the State Farm policy hinges *solely* upon Wrather's version of the events of June 13, 1980, as contained in his trial testimony and is neither governed nor affected by the allegations of the tort petition. Indeed the argument portion of State Farm's brief refers only to the "uncontroverted evidence" and makes no mention of the allegations of the tort petition.[3] For the reasons which follow this court concludes that the trial court properly found that coverage existed under the State Farm policy, and this is so whether the operative facts stem from the allegations of the tort petition (supplement-

ed by "actual facts" which "could be known from reasonable investigation") on the one hand, or from Wrather's trial testimony on the other hand or from a combination of the two.

Wrather, a wheat farmer of 40 years' experience, testified that he owned a "square" 160-acre tract which was on the south side and adjacent to Highway 162. Weather conditions on June 13 were "very hot and very dry." He had harvested his wheat crop and it was his intention to "fire the wheat stubble" as a preliminary to planting a crop of soybeans. The highway ran generally east and west. Between the south edge of the highway and Wrather's wheat field was a "grass strip," about 40 feet wide, containing grass "from waist high to knee high all along there."

Wrather drove his station wagon, the vehicle insured under the State Farm policy, into the wheat field and near its north end. "I went in there with my automobile and my tire. I put the tire on top of my first row of [wheat stubble] and started the fire under the tire. I was burning the tire because it makes a good burner. I intended to tie the tire on the back of the station wagon and drag it over the wheat field. I was out of the station wagon when I first lit the wheat stubble under the tire. While the tire was catching on fire I wanted to burn this little wet end [in the northeast corner of the wheat field]. I walked across there and just set a few fires around in there [by hand] so they could be burning while I was going here. While I was on foot I set five or six fires—five or six spots.

3. State Farm's position overlooks the principle that "[i]n any bench-tried case, the trial court is the arbiter of the facts; he may believe or disbelieve any of the testimony in whole or in part, including uncontradicted testimony." *In re Marriage of Jackson,* 592 S.W.2d 875, 877 (Mo.App.1980).

"The facts developed in a liability insurer's declaratory judgment action can be used along with those contained in a complainant's petition to determine the insurer's obligation to defend; the insurer takes a calculated risk of this when it seeks a declaratory judgment.

"In a declaratory judgment proceeding the court will compare the damage complaint with the policy and determine whether the allega-

tions fall within the risk insured against. It is the nature of the damages claimed rather than the actual details of the accident or ultimate liability which determines the insurer's duty to defend. A suit should not be entertained where the insurer bases its denial of coverage on the contention that the true facts are at odds with the allegations in the complaint. However there are situations where a court will not entertain the action on the ground that there is no justiciable controversy between the parties and the insurer may be required to defend the action against the insured and defend the garnishment action at a later time." Appleman, Insurance Law & Practice, Volume 7C, § 4688, p. 172.

It was five to seven minutes after I set these other fires before I got back to the station wagon, hooked the tire on, and started criss-crossing the field. I got into the station wagon with the burning tire attached to the rear of it and by that time it was getting burned. My other fire was going all right so I got on the first line next to my green grass and I went back and forth across there, just started driving back and forth."

After he began criss-crossing the field in the station wagon with the burning tire attached, Wrather worked his way to the south end of the field and was there "before I knew there was a problem at all. Someone told me there had been an accident or something on the road. I went back to the north end of the field where the green grass had caught fire and I saw some wrecked vehicles." About 30 minutes elapsed from the time Wrather "set the first fire" until he "returned and saw there had been a wreck."

The five or six fires which Wrather set while he was on foot will be called "the hand-set fires."

The basic inquiry is whether the damage to Nanney's tractor-trailer unit was "caused by accident resulting from the use" of Wrather's station wagon. The State Farm policy does not contain a definition of any of the words in the quoted phrase. State Farm's first contention, as this court understands it, is that the damage to Nanney's unit was not "caused by accident" for the reason that Wrather intentionally ignited the wheat stubble and the tire and intentionally drove the station wagon in the manner previously described.

State Farm's first contention ignores and is inconsistent with a principle discussed extensively in *White v. Smith*, 440 S.W.2d 497 (Mo.App.1969) and *N.W. Elect.*

*Power Coop., Inc. v. American M. Ins. Co.*, 451 S.W.2d 356 (Mo.App.1969). That principle is that the term "caused by accident," as used in policies of liability insurance, is satisfied where the insured did not intend that damage result from his act although the act itself was intentional and did so result. *White* points out that, as a matter of public policy, a liability insurance policy does not afford coverage for damage intentionally inflicted by the insured; that is, for damage resulting from acts deliberately done by the insured, "knowing that they were wrong, and intending that harm result from said acts." There is nothing in the instant record to show that Wrather, by his conduct in lighting the various fires, intended to cause damage to Nanney's tractor-trailer unit. It follows that Nanney's damage was "caused by accident" and the remaining inquiry is whether the policy language "resulting from the . . . use of the car" is met.

For many years automobile liability policies have contained language to the effect that the insurer agreed to insure "against liability for damages caused by accident *and arising out of* the ownership, maintenance, or use of" the vehicle.[4] It will be noted that the instant State Farm policy departs from the classic terminology. State Farm agrees to pay damages which an insured becomes legally liable to pay because of damage to property "caused by accident resulting from the ownership, maintenance or use of your car . . . ." Notice that the word "and" is omitted following the word "accident." The words "resulting from" are substituted for "arising out of." Is the new wording synonymous with the old?[5] Does the word "resulting" in the State Farm policy modify the word "accident" which immediately precedes it or does it modify the word "damage" (or bodily injury)? These questions, if such they be, have

---

4. See, generally, 15 A.L.R. 4th 10 (Automobile liability insurance: what are accidents or injuries "arising out of ownership, maintenance or use" of insured vehicle?) See also 7 Am.Jur.2d Auto.Ins. § 199, p. 708, dealing with injuries caused by use of equipment in, on, or attached to a vehicle as "arising out of the use" thereof.

5. At least one high authority has said, in a situation not involving insurance, "The words 'arising from' are synonymous with the words 'resulting from.' See Roget's Int'l Thesaurus 72 (3d ed. 1962)." *Crane Towing, Inc. v. Gorton*, 89 Wash.2d 161, 570 P.2d 428 (Wash. banc 1977).

not been raised by State Farm and will not be explored. The instant record entitled the trial court to find that Nanney's damage (and the highway collision or collisions) resulted from Wrather's use of his station wagon. It is also true that Nanney's damage arose out of that use.

Nanney's petition in the tort action alleged that Wrather negligently caused "a large wheat field" to be burning "in close proximity" to the highway. The petition also alleged that Wrather failed to "sufficiently contain the smoke and fire so as to avoid obscuring the vision of motorists on Highway 162." It will be observed that the petition makes no attempt to identify the source of the fire and smoke other than the "large wheat field."

Much of the testimony of Wrather has been set forth and much of it is vague. Wrather, after lighting the wheat stubble under the tire while the vehicle was not in motion, set the hand-set fires. It is a matter of conjecture where those fires were set, other than in the north part of the field, but again Nanney's petition does not pinpoint the source of the "fire and smoke" which interfered with the vision of the various drivers. So far as the instant record reflects, according to the broad language of the petition, the vision of any one of the several motorists could have been obscured by fire or smoke originating in any part of the field.

In their brief and on oral argument counsel for State Farm argue that the cause of the highway collisions was *black* smoke which originated from the burning of the green weeds in the 40-foot strip separating the highway from the wheat field and was caused by the hand-set fires. Counsel also argue that wheat stubble, when ignited, creates a *white* smoke which does not interfere with the vision of motorists. They further argue that the movement of the station wagon, with the burning tire attached, in criss-crossing the wheat field, created only white smoke which bore no causal connection to the series of collisions. These arguments have no merit.

Nanney's petition makes no reference to black smoke or white smoke and of course the petition also includes fire itself. The trial court's judgment does not mention black smoke or white smoke, nor does it identify the portion or portions of the land which gave rise to the dangerous condition on the highway. Moreover, the most charitable explanation of Wrather's evidence, which the trial court was at liberty to disbelieve in whole or in part, would not support counsel's "white smoke-black smoke" argument. Wrather was at the south end of the field, 30 minutes after commencing his incendiary endeavors, and did not know that the highway events had happened until so informed by a bystander. There was no evidence, from Wrather or otherwise, where the collision or collisions occurred with respect to the wheat field, whether east of it, west of it, or somewhere along the highway adjoining its one-half mile northern border. There was no evidence of when, during the 30-minute period, any of the collision or collisions occurred. In short, the broad scope of the petition was unimpaired by Wrather's vague testimony.

There was no testimony from any of the vehicle drivers with regard to the movements of the various vehicles or the cause or causes of any of the collisions. State Farm makes no claim with regard to where the burden of proof lay on the issue of State Farm's coverage, nor does State Farm claim, if it be assumed that the burden was on Wrather, that the burden was not sustained by proof of the content of Nanney's petition and the State Farm policy.

In support of its argument that Nanney's damage did not result from Wrather's use of his station wagon, State Farm cites *Schmidt v. Utilities Ins. Co.,* 353 Mo. 213, 182 S.W.2d 181 (Mo.1944), long regarded as a leading authority in the area, but that case does not aid State Farm. In *Schmidt* the automobile liability policy covered liability imposed upon the insured for damages because of bodily injury "caused by accident and arising out of the ownership, maintenance or use of the automobile." A pedestrian was injured by falling over

blocks which had been used by the employees of the insured coal company in backing the insured truck over a sidewalk for the purpose of unloading coal. The court held that the employees' acts of leaving the blocks on the sidewalk after the truck was unloaded "arose out of the use of" the truck and the coverage applied.

The court rejected the insurer's contention that "the efficient direct and proximate cause" of the injury was "the separate, independent and intervening negligent acts of the truck drivers in placing the blocks on the sidewalk." The court pointed out that the policy did not require a finding that the injury "was directly and proximately caused by the use of the automobile, or caused by the automobile itself, or that the injury occurred while the automobile was in motion or operation." The court also said 182 S.W.2d at p. 183:

"The words of the policy are 'caused by accident and arising out of the * * * use of the automobile.' The words 'arising out of * * * use' are very broad, general and comprehensive terms. The insurer made no attempt to limit the plain, usual and ordinary meaning of the terms used. We find nothing in the policy requiring that the ownership, maintenance, or use of the automobile shall be the direct and 'efficient cause of the injuries sustained,' as appellant contends. The words used, we think, are much broader than the words 'caused by,' which are considered in some of the cases cited."

The court also held that the policy did not require "that the injury be the direct and proximate result, in any strict legal sense of that term, of the use of the automobile covered by the policy." 182 S.W.2d at p. 184 the court said:

"Did plaintiff's injury arise out of the 'use' of Coal Company's automobile delivery trucks within the meaning, purpose and intent of the policy? Whether or not plaintiff's injury, and the negligent act which caused it, arose out of the use of the trucks covered by the policy depends upon the general circumstances of the case as shown by the evidence, the nature of the use of the automobile trucks, as shown by the declarations in the policy, the connection or relationship between the negligent act, which produced the injury, and the intended use of the trucks. We must consider whether the negligent act and resulting injury was a natural and reasonable incident or consequence of the use of the trucks for the purposes shown by the declarations, though not foreseen or expected; and whether, after the negligent acts and injury were complete, it was possible to trace the negligent acts and resulting injury as reasonably incident to, and closely connected with, the use of the trucks for the purposes shown in the declarations of the policy.

" . . . The injury, of course, did not arise out of the use of the trucks if it was directly caused by some independent act, or intervening cause wholly disassociated from, independent of and remote from the use of the trucks. . . . Liability should not be extended to a result distinctly remote, although the chain of causation be not broken."

■ Although the State Farm policy, which State Farm itself attached to its third-party answer, refers to "the top of the declarations page," that page is not contained in the record on appeal and this court is unaware of its contents, nor does this court know whether it was shown to the trial court. Where an exhibit is omitted from the transcript and not filed with the appellate court, the intendment and content of the exhibit will be taken as favorable to the trial court's ruling and as unfavorable to appellant. *Jo B. Gardner, Inc. v. Beanland,* 611 S.W.2d 317, 320[1] (Mo.App.1980). Moreover, Wrather testified that "it is quite common for farmers, as well as my own practice and experience, that you take an old tire, and, after it gets to burning good, either tow it across the field with a truck or a tractor or some motor vehicle; that's a normal farming practice." There is no evidence to support State Farm's claim that Wrather's use of the station wagon in the manner previously described was not within the "contemplated coverage."

The State Farm policy does not contain such language as "directly and proximately resulting," nor does it contain language such as "solely resulting." It is of no moment, for present purposes, whether the highway mishaps may have been due in part to the acts of Wrather in setting the hand-set fires while he was some distance away from the station wagon and, at least arguably, "not using it." It is also of no moment that the negligence of some or all of the vehicle drivers played a part, as the petition alleged, in causing Nanney's damage. It is sufficient that Nanney's petition was broad enough to include the conduct of Wrather in driving the station wagon, with the burning tire attached, across the major portion of the field. That conduct, according to the petition, has a causal connection with Nanney's damage. The allegations of the petition were sufficient to impose upon State Farm the duty to defend.

Finally, State Farm argues that the trial court erred in finding there was coverage under the State Farm policy for the reason that the trial court also found there was coverage under the F & C policy. These findings, says State Farm, are inconsistent because of the language of a certain exclusion in the F & C policy.

The judgment of the trial court made no mention of the exclusion nor indeed of any provision of the F & C policy except *another exclusion* which the court ordered deleted. Whether the trial court based its finding against F & C upon the conduct of Wrather as alleged in Nanney's petition or on Wrather's conduct in setting the hand-set fires, or on Wrather's use of the station wagon in criss-crossing the field is not shown. State Farm's brief concedes that the trial court could have found coverage under the F & C policy if that finding was based on Wrather's setting of the hand-set fires.

This court is not concerned with the accuracy of the finding of coverage under the F & C policy for the reason that State Farm has not demonstrated that the finding was both erroneous and prejudicial to State Farm. See Rule 84.13(b) V.A.M.R.

The judgment is affirmed.

GREENE, C.J., and MAUS and CROW, JJ., concur.