## STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff-Respondent,

v.

## Benjamin Allen WHITEHEAD and Phyllis Alberta Whitehead, Defendants-Appellants,

and

## Debra Galemore, Administratrix of the Estate of Gordon Galemore, deceased, Defendant.

No. 13704.

Missouri Court of Appeals, Southern District, Division Three.

May 29, 1986.

Harold D. Jones, Bock & Jones, New Madrid, for plaintiff-respondent.

William Clayton Vandivort, Lew Polivick, Vandivort & Polivick, Sikeston, for defendants-appellants.

PREWITT, Chief Judge.

On November 6, 1985, this district filed an opinion reversing the trial court's judgment and remanding the cause with directions. Respondent's motion for rehearing and application for transfer to the Supreme Court was denied on November 25, 1985. Thereafter, an application for transfer was filed with the Supreme Court and on January 15, 1986, that application was sustained. On May 20, 1986, the Supreme Court entered an order stating: "Case retransferred to Missouri Court of Appeals, Southern District." With the addition of this paragraph, our original opinion is readopted. It is set out hereafter.

Plaintiff-Respondent State Farm Mutual Automobile Insurance Company sought a declaratory judgment that its insurance policy did not provide coverage regarding an injury suffered by defendant-appellant Benjamin Allen Whitehead. Whitehead was shot in the leg while a passenger in an automobile owned and being driven by Gordon Galemore. There was in effect at the time of the shooting an automobile liability policy issued by State Farm Mutual Automobile Insurance Company to Galemore applicable to the vehicle involved. Galemore was killed in the same shooting which resulted in Whitehead's injury.

Benjamin Whitehead and his wife brought a negligence action against the administratrix of Galemore's estate seeking damages due to Benjamin Whitehead's injury. State Farm then sought the declaratory judgment, contending that it was not obligated to defend the Whiteheads' action nor pay any amount due as a result of the action. Benjamin Whitehead counterclaimed, asking the court to "declare that Plaintiff is obligated to pay Defendant Benjamin Allen Whitehead his reasonable medical expenses incurred in connection with said accident;" and "that the court enter a judgment against Plaintiff for the amount of said reasonable medical expenses". After nonjury trial the trial court ruled all issues in favor of State Farm. The Whiteheads appeal.

The facts relevant to our consideration are undisputed. Benjamin Whitehead, his brother, and Gordon Galemore attended a basketball game in Charleston. After the game Benjamin Whitehead's brother's car was missing. Benjamin, his brother, and Gordon Galemore used Galemore's automobile to look for the missing car. Gordon Galemore was a juvenile officer and a deputy sheriff. The car was found in Charleston, out of gas. The three then went to Benjamin Whitehead's brother's house to get some gasoline. Apparently as they were in or near Galemore's car preparing to leave, a man known as "Lightning"

asked Galemore to take him "to Miss Johnson's house." Lightning sat in the right front passenger seat and Benjamin Whitehead and his brother were in the rear seat. Gordon Galemore drove.

An armed robbery had occurred earlier that evening in Charleston and Galemore, apparently believing that Lightning may have been involved, drove to the police station. As the vehicle started to turn off the road into the police station Lightning said, "I wouldn't do that if I were you." Gordon Galemore replied, "No, I wouldn't do that if I were you." Both Lightning and Galemore had pistols. Galemore was shot and left the car while it was moving slowly. How many shots were fired and by whom is not in the record. Benjamin Whitehead's brother reached over from the back seat and stopped the car and then Lightning ran from it. When Benjamin Whitehead got out of the car he could not walk because his leg had been shot.

The issues turn on the meaning of certain language in the policy. The parties agree on which portions of the policy are relevant but disagree on their application. In interpreting an insurance policy its words are to be given their plain meaning. *Dennis Cain Motor Co. v. Universal Underwriters Insurance Co.*, 614 S.W.2d 275, 277 (Mo.App.1981).

The first matter discussed is appellants' contention that State Farm is obligated to pay any amount appellants recover as a result of their negligence action against the administratrix of Galemore's estate. Under the liability section, State Farm's policy provided that it would:

"1.  pay damages which an insured becomes legally liable to pay because of:
   a.  bodily injury to others, and
   b.  damage to or destruction of property including loss of its use,
caused by accident resulting from the ownership, maintenance or use of your car;
...."

The question on which coverage depends, as presented and briefed by the parties, is whether Benjamin Whitehead's injury resulted from the "use" of Galemore's automobile.

*Schmidt v. Utilities Ins. Co.*, 353 Mo. 213, 182 S.W.2d 181, 183 (1944) concerned an insurance policy using different but similar language to that in the policy here. The opinion states:

The words "arising out of * * * use" are very broad, general and comprehensive terms. The insurer made no attempt to limit the plain, usual and ordinary meaning of the terms used. We find nothing in the policy requiring that the ownership, maintenance, or use of the automobile shall be the direct and "efficient cause of the injuries sustained," as appellant contends. The words used, we think, are much broader than the words "caused by," which are considered in some of the cases cited.

"Use" is the "general catch-all of the insuring clause, designed and construed to include all proper uses of the vehicle not falling within one of the previous terms of definition." 6B Appleman, Insurance Law and Practice, § 4316, pp. 341–342 (Buckley ed. 1979). "The term 'use' has been broadly construed and it would appear to be a general catchall term not limited to the ordinary use of the automobile." 12 Couch on Insurance 2d, § 45:64, p. 300 (Rev. ed. 1981). See also *Oberkramer v. Reliance Insurance Co.*, 650 S.W.2d 300, 302 (Mo.App.1983) (blocking roadway with unoccupied vehicle was "using" the vehicle); Annots., Automobile Liability Insurance: What are accidents or injuries "arising out of ownership, maintenance, or use" of insured vehicle, 15 A.L.R.4th 10 (1982) and 89 A.L.R.2d 150 (1963).

In contending there was no "use" of Galemore's automobile, State Farm primarily relies on *Cameron Mutual Insurance Co. v. Ward*, 599 S.W.2d 13 (Mo.App.1980). Disregarding the differences in policy language, *Cameron* is not applicable here. There the facts and thus the "use" of the vehicle were different. *Cameron* involved an accidental discharge of a rifle after the parties were out of a pickup truck.

■ Coverage was denied in *Cameron* because the pickup was merely the "situs" or "locus" of the accidental discharge of the rifle and thus there was no "causal connection" between its discharge and the use of the vehicle. 599 S.W.2d at 18. That is not true here. A causal connection is present. The discharge of the pistol or pistols was a result of the use of Galemore's car in transporting Lightning to the police station. Although the injury of Benjamin Whitehead appears accidental, the shot or shots were intentional. Lightning's use of his pistol resulted because the car was being used to take him where he preferred not to go. Galemore likely would not have used his pistol without the threat or use by Lightning of his gun.

*Cameron* and the annotations and treatises cited above discuss numerous decisions, none of which are based on facts like those present. We have read many of those decisions but see no point in lengthening this opinion to review them here. Galemore's automobile was not just the situs where the injury occurred, a basis often used to deny recovery in some of those cases. The injury occurred because the vehicle was being used to transport a robbery suspect to the police station. That use caused the shooting. Compare *Novak v. Government Employees Insurance Co.*, 424 So.2d 178 (Fla.App.1983) aff'd 453 So.2d 1116 (Fla.1984).

Benjamin Whitehead's injury resulted from the use of Galemore's automobile. State Farm is obligated to pay, to the monetary extent of its coverage, any amount due as a result of the Whiteheads' action against the administratrix of Gordon Galemore's estate.

We now discuss the "medical pay" issue raised in appellants' counterclaim. State Farm, in its responsive pleading and at trial, objected to the filing and presentation of evidence on the counterclaim. The trial judge did not allow evidence of the medical expenses which Benjamin Whitehead claimed were caused by his injury. The judge stated that evidence on that issue would be heard if it was determined that

State Farm was obligated for the amount of those expenses. As these procedures are not questioned, we do not discuss them.

The policy provides that certain medical expenses resulting from bodily injury will be paid for a:

"... person while occupying:

    a. a vehicle covered under the liability coverage".

The policy states, "Occupying-means in, on, entering or alighting from."

■ State Farm contends that there is no coverage because appellant Whitehead's injury "was unrelated to the 'use' of the automobile." The policy contains no such requirement. See *Milman v. Government Employees Insurance Co.*, 66 Misc.2d 992, 323 N.Y.S.2d 248, 250 (1971), aff'd 70 Misc.2d 774, 334 N.Y.S.2d 453 (1972). Even if such "use" must be shown, the argument fails because of what has been said here in discussing liability coverage. Giving the policy language its plain meaning, medical payment coverage exists since Benjamin Whitehead was in Galemore's automobile. See Annot., Automobile Insurance: When is a person "occupying" an automobile within meaning of medical payments provision, 42 A.L.R.3d 501 (1972).

The judgment is reversed and the cause remanded for the trial court to set aside its previous judgment and to hear evidence on appellants' counterclaim and thereafter to enter a judgment that is in favor of appellants on respondent's petition for declaratory judgment, and that does not conflict with this opinion regarding appellants' counterclaim.

CROW, P.J., and FLANIGAN, J., concur.

MAUS, J., dissents and files dissenting opinion.

MAUS, Judge, dissenting.

With respect for the majority opinion and the authorities cited and supporting that opinion, I must dissent. For the purpose of this opinion it must be assumed the decedent was negligent. But, that is not determinative of the issue presented. The issue

is whether or not the plaintiff insured against the risk that resulted in the injury. I believe the accidental injury resulted from the decedent's negligence in his actions as a juvenile officer and a deputy sheriff, not from negligence in the *use of the automobile* as those terms are employed in the policy.

This conclusion is not contrary to *Schmidt v. Utilities Ins. Co.*, 353 Mo. 213, 182 S.W.2d 181 (1944), 154 A.L.R. 1088. This is true even though that case has been relied upon in many authorities that support the majority opinion. In *Schmidt* the bodily injury liability coverage clause provided the automobile was to be used for commercial purposes. The term "commercial" was "defined as the transportation or delivery of goods, merchandise or other materials, and uses incidental thereto, in direct connection with the named insured's business occupation as expressed in item 1. (c) Use of the automobile for the purposes stated includes the loading and unloading thereof." *Schmidt v. Utilities Ins. Co.*, supra, 182 S.W.2d at 182.

In defining coverage the court said:

We must consider whether the negligent act and resulting injury was a natural and reasonable incident or consequence of the use of the trucks for the purposes shown by the declarations, though not foreseen or expected; and whether, after the negligent acts and injury were complete, it was possible to trace the negligent acts and resulting injury as reasonably incident to, and closely connected with, the use of the trucks for the purposes shown in the declarations in the policy.

Id. 182 S.W.2d at 184. In *Schmidt* the negligence was in the use of the blocks in unloading coal, an included peril.

The insuring agreement in *Schmidt* referred to injury caused by accident "arising out of the ownership, maintenance or use of the automobile." Id. 182 S.W.2d at 183. The insuring agreement in question refers to injury "resulting from" the ownership, maintenance or use of the automobile. I find "resulting from" comparable

to, if not more restrictive than, "caused by", the latter declared by *Schmidt* to be more narrow than "arising out of". Id. 182 S.W.2d at 183. Nonetheless, as hereafter developed, I do not base my dissent on that distinction.

Regardless of the phrase used, an unrestricted construction of such phrases can result in coverage for risks only remotely and incidentally connected to an insured automobile. For example, it could lead to coverage for a physician's use of an automobile to transport a patient when he knew or should have known the patient needed oxygen not available in the automobile. See *Associated Indem. Corp. v. Warner*, 143 Ariz. 585, 694 P.2d 1199, modified 143 Ariz. 567, 694 P.2d 1181 (App.1983). But see, *Allstate Ins. Co. v. Gillespie*, 455 So.2d 617 (Fla.App.1984); *Classified Ins. Corp. v. Vodinelich*, 354 N.W.2d 63 (Minn. App.1984).

An often repeated observation is that in determining coverage, the question whether an injury resulted or arose from the use of the insured automobile is to be determined by the facts of each case. *Hicks v. Walker County Sch. Dist.*, 172 Ga.App. 428, 323 S.E.2d 231 (1984). The term "use" need not bear a fixed meaning. It is broader than but includes "operating". *Allstate Ins. Co. v. Hartford Accident & Indem. Co.*, 486 S.W.2d 38 (Mo.App.1972). The term use appears 36 times in the policy in question. In many instances the term obviously refers to the operation of the automobile. The insuring agreement cannot for all purposes be limited to the meaning of "operating". For example, the automobile liability insurance policy was intended to provide coverage for an insured legally responsible for the operation of the insured vehicle by another. However, under the facts of this case in determining the risk, as distinguished from the insured, intended to be within the coverage, the meaning of "operation" is compatible with the context of the policy.

In determining the risks covered, a limitation upon what damages are "caused by accident and arising out of the ownership,

maintenance, or use of the automobile" has received various expressions. Such a limitation has been said to exclude an accident wholly disassociated from, independent of and remote from the automobile's normal use. *Wall v. Nationwide Mut. Ins. Co.*, 62 N.C.App. 127, 302 S.E.2d 302 (1983). Put another way, it has been said the automobile itself must be an active accessory to the injury sustained, *Progressive Cas. Ins. Co. v. Hoekman*, 359 N.W.2d 685 (Minn. App.1984), or the accident must be immediately identifiable with the ownership, maintenance or use of the automobile, *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Bruecks*, 179 Neb. 642, 139 N.W.2d 821 (1966), or the injury must be foreseeably identifiable with the normal use of the automobile, *Detroit Auto. Inter-Ins. Ex. v. Higginbotham*, 95 Mich.App. 213, 290 N.W.2d 414 (1980). The most common expression of such a limitation is that the accident must arise from the inherent nature of the automobile as such. *Western Cas. and Sur. Co. v. Branon*, 463 F.Supp. 1208 (E.D.Ill.1979); *State Farm Mut. Auto. Ins. Co. v. Smith*, 107 Idaho 674, 691 P.2d 1289 (App.1984); *United States Fidelity & G. Co. v. Western Fire Ins. Co.*, 450 S.W.2d 491 (Ky.App.1970); *Norgaard v. Nodak Mutual Insurance Company*, 201 N.W.2d 871 (N.D.1972). A recognized treatise states

> three rather interesting rules have been set up to determine the insurer's liability: 1. The accident must have arisen out of the inherent nature of the automobile, as such; 2. The accident must have arisen within the natural territorial limits of an automobile, and the actual use, loading, or unloading must not have terminated; 3. The automobile must not merely contribute to cause the condition which produces the injury, but must, itself, produce the injury.

Appelman, Insurance Law and Practice (Buckley ed.) § 4317.

The gravamen of the allegations of negligence presented in this case is that the decedent was negligent in his use of the car because he had not searched or restrained Lightning. Under any of the limitations noted, Whitehead's injury did not result from the use of the automobile. The negligence was not sufficiently "use" connected to constitute a risk within the contemplation of the parties. *U.S. Fidelity & Guaranty Co. v. Western Fire Ins. Co.*, supra; *Schmidt v. Utilities Ins. Co.*, supra. For the reasons stated, I would affirm the judgment.