**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant,**

v.

**Thomas FLANARY, Wanda Flanary and Allen Broeckelman, Respondents.**

No. 18898.

Missouri Court of Appeals,
Southern District,
Division One.

June 22, 1994.

Motion for Rehearing and Transfer to Supreme Court Denied July 14, 1994.

Application to Transfer Denied
Aug. 15, 1994.

Dan L. Birdsong, Thomas, Birdsong & Clayton, P.C. (Charles Bennett, of counsel), Rolla, for appellant.

Michael J. Patton, Joseph P. Winget, Turner, Reid, Duncan, Loomer & Patton, P.C., Springfield, for respondents.

MONTGOMERY, Judge.

State Farm appeals from a judgment that declared it had a legal obligation to defend a suit brought by Allen Broeckelman against Thomas Flanary, State Farm's insured, and to provide Flanary liability coverage under an insurance policy it issued to him covering a 1978 Chevrolet pickup. Broeckelman's suit alleged that he was injured when part of a boom collapsed and fell on him. He claimed that Flanary negligently constructed a boom extension on a crane and that his injuries resulted therefrom.

State Farm's only point relied on contends the judgment erroneously declared or applied the law by holding that Flanary's use of a portable welder in constructing the boom extension was a use of the covered motor vehicle. Because we agree that the law was erroneously applied, the judgment must be reversed.

In reviewing a declaratory judgment, the appellate court is to sustain the judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Eaton v. State Farm Mut. Auto. Ins. Co.*, 849 S.W.2d 189, 191 (Mo.App.1993).

State Farm sought a declaration that its automobile insurance policy with Flanary did not provide coverage for the injury Broeckelman claimed, because the injury did not result from the use of the insured vehicle. The policy in question provided liability coverage for "damages which an **insured** becomes legally liable to pay because of ... bodily injury to others ... caused by accident resulting from the ownership, maintenance or use of [the insured's] car."

The relevant facts are undisputed. Flanary operated a welding business in which he used a portable welder. Before constructing the boom extension that caused Broeckelman's injury, Flanary had welded a portable welder to the bed of the insured vehicle to keep it from coming loose or being stolen. The portable welder generates its own power supply and does not require attachment to the truck in order to operate. Flanary used the truck in his business only to transport the portable welder from place to place and never used the portable welder when the truck was in motion.

During the summer of 1988 Robert Thornton asked Flanary to build a boom extension for his crane, which was mounted on a truck. After Flanary consented, Thornton left the crane at Flanary's place of business for the work to be done. Flanary accomplished the task after three days of work in August 1988. Each time Flanary worked on the boom extension, he simply backed his truck up to the crane. At no time was Flanary's truck in motion or the motor running when he welded on the boom extension.

On October 30, 1989, part of the boom "broke," fell from the crane, and injured Broeckelman who was an employee of Robert Thornton. Thereafter, Broeckelman filed suit against Flanary.

After a non-jury trial, the trial court found that coverage existed under State Farm's policy. In its findings and conclusions, the trial court notes that there are no Missouri cases on point but that Louisiana has allowed coverage in cases with similar facts. In making its judgment, the trial court relied on *United States Fidelity & Guaranty Co. v. Burris*, 240 So.2d 408 (La.App.1970).

The question on which coverage depends is whether Broeckelman's injury resulted from the "use" of Flanary's truck. The parties agree that the relevant policy provision is the one earlier quoted, but they disagree on its application. The issue turns on the meaning of that provision. In interpreting an insurance policy, its words are to

be given their plain meaning. *State Farm Mut. Auto. Ins. Co. v. Whitehead*, 711 S.W.2d 198, 200 (Mo.App.1986).

State Farm begins its argument by agreeing with the trial court that no Missouri case squarely addresses the issue raised here. Accordingly, State Farm suggests we should be guided by a series of Missouri cases involving firearms-related accidents in or near an insured vehicle. See *Brown v. Shelter Mut. Ins. Co.*, 838 S.W.2d 148 (Mo.App.1992), *Steelman v. Holford*, 765 S.W.2d 372 (Mo. App.1989), and *Cameron Mut. Ins. Co. v. Ward*, 599 S.W.2d 13 (Mo.App.1980). In general, these cases denied coverage because the insured vehicle was merely the "situs" of an accidental discharge of a firearm. There was no causal connection between the accident and the use of the motor vehicle.

More persuasive than the firearms-related cases are several well-reasoned cases from other jurisdictions decided upon facts almost identical to those here. *Associated Indep. Dealers, Inc. v. Mut. Serv. Ins. Co.*, 304 Minn. 179, 229 N.W.2d 516 (1975), involved a declaratory judgment action brought to determine coverage under an automobile insurance policy. There, a work crew transported borrowed acetylene cutting equipment in the rear of an insured Ford van. The equipment consisted of two oxygen tanks connected to a cutting torch by a hose (much like the welding equipment in this case). While using the cutting torch to cut railroad tracks, the work crew allowed sparks to ignite a fire, which burned plaintiff's building. The Minnesota Supreme Court said:

> The question of whether a loss is sufficiently related to the ownership, maintenance, or use of an insured vehicle has been the subject of frequent judicial interpretation. In general terms, it has been established that such relationship need not be a proximate cause in the strict legal sense. Rather, it is sufficient to establish that the injury or loss "was a natural and reasonable incident or consequence of the use of the [insured] vehicle." It has been said that the causal connection must be "reasonably apparent," and that "the mere fact that the use of the vehicle preceded the harm which was later sustained is not sufficient to bring such harm within the coverage of the policy." It has also been held that the policy term "arising out of" means "originating from," or "having its origin in," "growing out of," or "flowing from." In any event, each case presenting such a question must, to a great degree, turn on the particular facts presented.

*Id.* 229 N.W.2d at 518 (footnotes omitted). Continuing, the court held as follows:

> We hold that, under the facts of this case, the trial court could not find the requisite causal link between the alleged "use" of the insured vehicle and the fire. It is clear from the record that the fire was caused by the actual cutting of the rails or by improper maintenance of the warehouse. In any event, the fact that part of the acetylene cutting equipment was in the van when the fire began was a mere fortuity. The relationship between the use of the van and the ignition of the fire was *casual* at best, and in our view that link was not sufficient to bring the fire within the coverage afforded by defendant's policy. The scope of coverage afforded therein must end at some point, and such is the case in this litigation.

*Id.* at 518–19.

In *Schmidt v. Luchterhand*, 62 Wis.2d 125, 214 N.W.2d 393 (1974), a truck-mounted hoist was being used to lift trusses, and plaintiff was injured when the hoist chain broke. Initially, the truck battery supplied the power to lift the hoist boom to the desired level. Thereafter, the hoist was hand-cranked to raise and lower the trusses. At the time of the accident, the truck served only as a platform for the hoist. The Wisconsin Supreme Court concluded that the injuries were not caused by an accident arising out of the use of the truck, saying that "such incidental use of the truck battery does not bring the hoist within the use of the automobile provisions of the ... insurance contract." *Id.* 214 N.W.2d at 399. The court reached this conclusion because the policy itself defined the word "automobile" as the *motor vehicle* described in the policy. "Thus," the court said, "the policy did not intend to provide absolute coverage for personal injury caused by the

equipment permanently attached to this motor vehicle." *Id.* at 396.

The *Luchterhand* court reached this result after relying on one of its earlier cases, *Norton v. Huisman*, 17 Wis.2d 296, 116 N.W.2d 169 (1962). There, the court held that injuries caused by a sewer cleaning machine, with an independent power supply, mounted on the back of the insured truck did not arise out of the ownership, maintenance or use of the insured truck. The court reasoned as follows:

> In the instant case the injuries suffered by Norton were the result of the independent operation of the sewer cleaning machine. We determine that the words "ownership, operation, maintenance, or use of a motor vehicle" cannot be reasonably construed to include the accident in question. The accident giving rise to the injuries received by the plaintiff was too remote to be deemed to come within the ordinary meaning of the words "ownership, operation, maintenance, or use of a motor vehicle." We will not sanction a construction of an automobile policy which will extend and enlarge the terms of such policy so as to provide coverage for the purpose of an independent machine unless the policy so specifically provides.

*Id.* 116 N.W.2d at 172 (footnote omitted).

When the words in State Farm's policy are given their plain meaning, we can only conclude that State Farm did not insure against the risk that resulted in the injury. Our view is supported by the reasoning in the three cases just discussed. Broeckelman's injury resulted from Flanary's alleged negligence in his actions as a welder, not from his negligence resulting from the use of the truck. If Flanary had dismounted the portable welder from the truck when constructing the boom extension, as opposed to using it while permanently mounted, the use of the truck would have been the same in either situation. The portable welder operated no differently whether mounted or dismounted. Other than transporting the portable welder, the truck played no part in Flanary's activities in constructing the boom extension. In other words, although Broeckelman's injuries may have resulted from Flanary's independent operation of the welding machine, they did not result from the ownership, maintenance, or use of his truck.

■ Furthermore, in giving the words in State Farm's policy their plain meaning, we observe that the insuring provision in question refers to injury "resulting from". the ownership, maintenance or use of the automobile. This language is different from the insuring provision in *Schmidt v. Utilities Ins. Co.*, 353 Mo. 213, 182 S.W.2d 181 (1944), a case upon which Broeckelman strongly relies to support the trial court's judgment. In *Schmidt*, the insuring provision refers to injuries "arising out of" the ownership, maintenance or use of the automobile. There, plaintiff was injured when he tripped over blocks used by the insured's employees to allow the insured truck to back over a sidewalk and unload coal. In finding coverage, the court said, "The words 'arising out of ... use' are very broad, general and comprehensive terms.... The words used, we think, are much broader than the words 'caused by,' which are considered in some of the cases cited." *Id.* 182 S.W.2d at 183. Clearly, "resulting from" is more akin to "caused by" than to "arising out of." Therefore, *Schmidt's* holding was based on broad and general policy terms that are not found in the State Farm policy here.

*Schmidt* is also distinguishable because the insuring provision in that case recited that the automobile was to be used for commercial purposes, defining the term commercial as the "transportation or delivery of goods" in connection with the insured's business. It further recited that the use of the automobile included "the loading and unloading thereof." No such provisions appear in State Farm's policy. Therefore, the insurance contract in *Schmidt* differs greatly from State Farm's.

Finally, contrary to the view of Broeckelman and the trial court, we find the *Burris* case unpersuasive. In *Burris*, the insured was using a cutting torch to detach a painting booth from a building. The oxygen-acetylene tanks were left on the insured's truck as the cutting torch was being used 12 feet off the ground. In the process, a building caught fire. Initially, the *Burris* court said:

The totality of the circumstances surrounding or leading up to an accident should be examined in determining if that accident arose out of the 'use' of the automobile or truck. By looking to what part the automobile played in the entire scheme the courts can determine if there is coverage, and if so, how far it will be extended.

240 So.2d at 409–10. After stating this sound premise, the Louisiana court then reversed a summary judgment in favor of the insurer, holding that the fire arose out of the "use" of the insured's truck. Like the Minnesota Supreme Court in *Associated Indep. Dealers,* we decline to follow *Burris* because the court failed to explain the causal connection between the "use" of the insured truck and the ignition of the fire. *See* 229 N.W.2d at 519.

We hold that, under the facts here, the trial court erroneously applied the law in finding a causal link between the "use" of Flanary's truck and the collapse of the boom extension. The boom allegedly fell as a result of Flanary's acts as a welder, not as a result of any use of the truck. The link between the use of the truck and the collapse of the boom is insufficient to bring the accident within the coverage afforded by State Farm's policy.

The judgment below is reversed and the cause remanded for entry of a judgment in favor of State Farm.

PARRISH, C.J., and SHRUM, J., concur.