Valerie POAGE, Plaintiff/Respondent

v.

STATE FARM FIRE & CASUALTY CO., Defendant/Appellant.

No. 27619.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 23, 2006.

Randy R. Cowherd, Catherine A. Reade, Springfield, for appellant.

Greggory D. Groves, Lowther & Johnson, Springfield, for respondent.

THEODORE B. SCOTT, Senior Judge.

This is an appeal of a summary judgment in an action that sought recovery on an insurance policy. The trial court awarded judgment for Valerie Poage (respondent) for damages sustained when she was struck by a boat while swimming in Table Rock Lake. State Farm Fire & Casualty Company (appellant) asserts the injuries sustained were not covered under its policy of insurance; that the injuries did not result from the "use" of the boat that it insured.

Both parties requested summary judgment. The trial court determined that the injury resulted from the use of respondent's boat and granted respondent's motion for summary judgment and denied appellant's. Appellant now appeals to this court. The two questions presented in this appeal are: (1) whether injuries suffered by respondent are covered within the "use" definition of her insurance policy; and (2) if so, whether there was a sufficient

causal relationship between the "use" of the boat and respondent's injuries when she was struck by another boat while swimming in Table Rock Lake.

The following facts were stipulated by the parties. On July 30, 2003, respondent and her husband, Jeff Poage, owned a 28 foot-Harrison pontoon boat which they took out on Table Rock Lake. While out on the lake, the Poages stopped the boat and turned it off in order to allow respondent and her guests to swim in the lake. Respondent jumped off the boat to swim and after swimming for around three to four minutes, she was approximately 25 feet from the boat. At this time, respondent was hit by a boat driven by Joshua Horsch. She suffered bodily injury as a result of this accident.

The Harrison pontoon boat owned by the Poages was insured by appellant at the time of the accident. The pertinent part of the policy states, "We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing bodily injury.... This coverage applies only for bodily injury caused by an accident resulting from the ownership, maintenance or use of your watercraft."

The parties stipulated to the facts. Thus, the propriety of the trial court's granting of summary judgment, which was based upon an interpretation of an insurance contract, is purely a question of law. *Green v. Federated Mutual Ins. Co.*, 13 S.W.3d 647, 648 (Mo.App.1999). We review appeals from motions for summary judgment de novo. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The criteria we use on appeal for testing the propriety of summary judgment are no different than those that should be applied by the trial court to determine the motion initially. *Id.* The

propriety of summary judgment is purely an issue of law; we give no deference to the trial court's order granting summary judgment. *Id.*

Respondent filed a motion to dismiss appellant's appeal for failure to comply with Rule 84.04(d) of the Missouri Rules of Civil Procedure. We find substantial compliance with Rule 84.04(d) by appellant and deny the requested relief.

■ Appellant's first point contends the trial court erred in granting summary judgment in favor of respondent because the language of the insurance contract was not ambiguous and did not provide coverage for respondent's injuries suffered when she was struck by another boat while swimming in Table Rock Lake. At the time of respondent's injuries, respondent was not in the act of using, maintaining, or operating her boat as required by the insurance policy for coverage.

■ Appellant contends the phrase, "resulting from the ownership, maintenance, or use of your watercraft," is unambiguous and does not provide coverage for respondent's injuries. It is important to note that insurance policies are designed to provide protection and will be liberally interpreted to grant, rather than deny, coverage. *American Family Mut. Ins. Co. v. Turner*, 824 S.W.2d 19, 21 (Mo.App. 1991). However, when an insurance policy is unambiguous, it will be enforced as written. *Peters v. Employers Mut. Cas. Co.*, 853 S.W.2d 300, 302 (Mo. banc 1993). When language in an insurance contract is unequivocal, it will be given its plain meaning even if it appears in a restrictive provision of the policy. *Harrison v. MFA Mut. Ins. Co.*, 607 S.W.2d 137, 142 (Mo. banc 1980).

■ An ambiguity only exists when there is duplicity, indistinctiveness, or uncertainty in the meaning of the words used

in the contract. *Peters v. Employers Mut. Cas. Co., supra.* If there is an ambiguity, it will be construed in favor of the insured. *Id.* However, a court is not permitted to create an ambiguity in order to distort the language of an unambiguous policy in order to enforce a particular construction which it feels is more appropriate. *Rodriguez v. General Accident Ins. Co. of America,* 808 S.W.2d 379, 382 (Mo. banc 1991).

The question exists whether the term "use" is ambiguous. Appellant contends that "use" is unambiguous and cannot be construed to include swimming near the boat. However, the term "use" does not have a distinct definition for the courts to grab onto and apply to all cases. In construing an automobile policy, the term "use" has been construed as a general catch-all term that includes all proper uses of a vehicle not falling within one of the others terms of definition. *State Farm Mut. Automobile Ins. Co. v. Whitehead,* 711 S.W.2d 198, 200 (Mo.App.1986). It is not limited to the ordinary use of a vehicle because such a normal use would be captured under the term "operating." *Id.* The terms "use" and "operation" are not synonymous and are quite different in an insurance policy. *Allstate Ins. Co. v. Hartford Accident & Indem. Co.,* 486 S.W.2d 38, 43 (Mo.App.1972). While a person who operates a vehicle obviously uses it, one can use a vehicle without operating it. *Id.* We conclude that the same rationale is applicable to a policy of insurance that insures a boat.

Finally, we note that while discussing whether the term "use" was held to be ambiguous under Missouri law in *Cawthon v. State Farm Fire & Casualty Co.,* 965 F.Supp. 1262 (W.D.Mo.1997), the court stated, "[H]ow could this term be capable of only one meaning when there are so many cases around the country trying to figure it out?" *Id.* at 1267. We agree.

Because the term "use," as applied to the insurance policy in this case, acts as a general catch-all and is capable of multiple meanings, there is an uncertainty as to the meaning of the word and this creates an ambiguity in the contract.

The question then is whether the boat was in "use" when it was turned off and the people were swimming around it. Liberally construing the term in favor of the insured, we find there is "use." When individuals take a boat out on the lake, it is often for the express purpose of going swimming on the lake. Thus, while on the lake with the boat, whether or not the boat is on or the passengers are even in the boat, the boat is still in "use."

We find that the insurance policy provided coverage within the "use" definition for respondent's injuries. The Poages took their boat on the lake to take the respondent and her guests swimming and the boat was necessary to get to that part of the lake. While swimming, respondent was hit by another boat and injured. Even though the boat was not running and was simply floating, it was still being "used" within the meaning of the term "use" in the insurance policy. Appellant's Point I is denied.

■ Appellant's second point contends the trial court erred in finding there was sufficient causal connection between the injury of respondent and the "use" of the boat for her insurance policy to provide coverage for respondent's injuries. Appellant and respondent agree that there needs to be some causal connection between the injury and the "use" of the boat in order to find coverage under the insurance policy. Appellant argues that to satisfy this requirement, the use of the boat must be shown to be the proximate cause of the injury. Respondent disagrees, arguing instead that only a substantial nexus

must exist between the use of the boat and the injury.

While there are no Missouri cases directly dealing with this issue as it relates to boat insurance, there are similar cases regarding liability insurance coverage relating to the "use" of an automobile. One of the earliest cases in Missouri to address this issue was *Schmidt v. Utilities Ins. Co.*, 353 Mo. 213, 182 S.W.2d 181 (1944). In *Schmidt*, a fleet of trucks was insured under an insurance policy that included the language "caused by accident and arising out of the ownership, maintenance, or use of the automobile." 182 S.W.2d at 183. The question in the case was whether said policy covered an injury resulting from the truck driver's negligence in leaving wooden blocks on a public sidewalk. The wooden blocks were used in the loading and unloading of the truck.

The court first addressed the level of causal relationship needed between the injury and the use of the truck. Appellant argued that there needed to be an efficient direct and proximate causal relationship. The court found "nothing in the policy requiring that the ... use of the automobile shall be the direct and 'efficient cause of the injuries sustained,' as appellant contends." *Id.* In reaching this decision, it noted that the term "arising out of" is much broader than the term "caused by." *Id.* The court found that even though the delivery trucks were neither being operated nor unloaded at the time the drivers placed the blocks on the sidewalk, the sole purpose in using such blocks was to facilitate the use and operation of the trucks. *Id.* at 185. Therefore, the acts of the driver in placing the blocks on the sidewalk arose out of the use of the trucks within the meaning, intent, and purpose of the policy. *Id.*

Appellant claims *Schmidt's* statement that a proximate causal relationship is not necessary is not binding because the language of this policy is "resulting from," not "arising out of." Appellant claims that the phrase "resulting from" is more restrictive than "arising out of" and should be interpreted as requiring a direct and proximate causal relationship. There is merit to this claim. In *State Farm Mut. Automobile Ins. Co. v. Flanary*, 879 S.W.2d 720 (Mo. App.1994), this court found the "resulting from" language in an insurance policy to be more restrictive than the "arising out of" language used in *Schmidt* stating, "Clearly, 'resulting from' is more akin to 'caused by' than to 'arising out of.' Therefore, *Schmidt's* holding was based on broad and general policy terms that are not found ... here." *Id.* at 723.

Knowing that the term "resulting from" is more restrictive than "arising out of," we still need to determine what level of causal relationship is necessary to recover under the policy and whether it rises to proximate cause as appellant contends. There are only a few cases in Missouri interpreting policies with the "resulting from" language. The first is *Fidelity and Cas. Co. of New York v. Wrather*, 652 S.W.2d 245 (Mo.App.1983). In *Wrather*, a farmer used his automobile to drag a burning tire around his field in order to burn the field. This activity caused smoke to rise from the field. The smoke blew across the highway and obscured the vision of motorists, which led to an injury accident. The farmer had an automobile insurance policy that stated it would "pay damages which an insured becomes legally liable to pay because of: ... (b) damage ... caused by accident resulting from the ownership, maintenance or use of your car." *Id.* at 247 n. 2.

The question this court addressed was whether the damage to the cars on the highway was caused by an accident "resulting from the use of" the farmer's car. This court held that even though there was not a direct and proximate causal connec-

tion, there was a sufficient causal connection between the driving of the car with a burning tire and the highway accident to find coverage in the policy, stating, "The ... policy does not contain such language as 'directly and proximately resulting,' nor does it contain language such as 'solely resulting.'" *Id.* at 252. Therefore, *Wrather* stands for the proposition that the term "resulting from" does not require a proximate causal connection. *Id.*

In *State Farm Mut. Automobile Ins. Co. v. Whitehead, supra,* this court again found that a proximate causal connection was not required. In *Whitehead,* three men, including Benjamin Whitehead, agreed to take a man known as Lightning to another house. They all got in a car owned and driven by Gordon Galemore. Galemore believed Lightning was involved in an armed robbery that took place earlier that evening and began driving toward the police station. As he was approaching the station, Lightning, who had a gun, threatened Galemore and shots were fired. Benjamin Whitehead was injured by the gunshots. The car driven by Galemore was insured and the policy provided that the insurer would "pay damages which an insured becomes legally liable to pay because of: (a) bodily injury ... caused by accident resulting from the ownership, maintenance or use of your car."

This court addressed the question of whether Whitehead's injury resulted from the use of the car and held that the policy covered the injury because it resulted from the use of the automobile. 711 S.W.2d at 201. Here, the use was more than just the situs of the injury; rather the injury occurred because the vehicle was being used to transport a suspect to the police station. *Id.*

Finally, this court addressed the issue in *State Farm Mut. Automobile Ins. Co. v. Flanary, supra.* In *Flanary,* Thomas Flanary welded a portable welder to the bed of his truck. This welder had its own power supply and did not require attachment to the truck to operate. He then went on a job to build a boom extension for a crane using the portable welder. Flanary went to the job site, parked his truck by the crane, and operated the portable welder. During construction of the boom, part of the boom broke and fell on Allen Broeckelman. Flanary had an insurance policy on his truck which provided that the insurer would provide liability coverage for "damages which an **insured** becomes legally liable to pay because of ... **bodily injury** to others ... caused by accident resulting from the ownership, maintenance or use of [the insured's] car." [Emphasis in original.] The court addressed the question of whether Broeckelman's injury resulted from the use of the truck. This court held that a sufficient causal link between the use of the truck and the collapse of the boom extension did not exist to warrant coverage under the policy. 879 S.W.2d at 724. In so holding, the court cited a Minnesota Supreme court decision which said:

> The question of whether a loss is sufficiently related to the ownership, maintenance, or use of an insured vehicle has been the subject of frequent judicial interpretation. In general terms, it has been established that such relationship need not be a proximate cause in the strict legal sense. Rather, it is sufficient to establish that the injury or loss "was a natural and reasonable incident or consequence of the use of the [insured] vehicle." It has been said that the causal connection must be "reasonably apparent," and that "the mere fact that the use of the vehicle preceded the harm which was later sustained is not sufficient to bring such harm within the coverage of the policy."

*Id.* at 722, *citing Associated Indep. Dealers, Inc. v. Mut. Serv. Ins. Co.,* 304 Minn. 179, 229 N.W.2d 516, 518 (1975).

After reviewing these three cases analyzing an insurance policy containing the language, "resulting from the operation, maintenance or use" of a vehicle, it is clear that the causal connection between the injury and the use of the vehicle does not need to be a proximate and direct cause. Instead, these cases stand for the proposition that, as stated by the Minnesota Supreme Court, the causal connection needs to be reasonably apparent. The injury or loss must be a natural and reasonable incident or consequence of the use of the insured vehicle.

It is reasonably apparent that when a car is used to burn a field, smoke will be created that may block the road. *Wrather*, 652 S.W.2d at 252. Also, it is reasonably apparent that an occupant of a car may get injured when that car is being used to transport dangerous suspects to a police station. *Whitehead*, 711 S.W.2d at 201. However, it is not reasonably apparent that when using a truck with an attached welder, a piece of the equipment being worked on will break off and fall and injure a bystander. *Flanary*, 879 S.W.2d at 724.

The question before this court, therefore, is whether it was reasonably apparent that the use of the boat could result in a person getting injured while swimming. There is no Missouri case on point and the appellant and respondent each urge this court to look to other state decisions for guidance.

Appellant relies on a California case *Ohio Cas. Ins. Co. v. Hartford Accident and Indemnity Co.*, 148 Cal.App.3d 641, 196 Cal.Rptr. 164 (1983). In this case, Geoffrey Daly used his boat to take a group of students out on Folsom Lake. One of the students was swimming in the lake when she was run over by another boat and suffered severe injuries. Daly had a homeowner's policy with personal liability coverage. This policy had an exclusion for "bodily injury ... arising out of the ownership, maintenance, operation, use, loading or unloading of: ... any watercraft." *Id.* at 644, 196 Cal.Rptr. 164. The question addressed by the court was whether Daly's homeowner's insurance policy excluded coverage because the injury arose out of his "use" of a watercraft. The California court held that the exclusionary provision was inapplicable, thus the homeowner's liability coverage applied in this situation. *Id.* at 648, 196 Cal.Rptr. 164. The court stated that the exclusion did not apply because the only "use" of boat was to transport the students to the scene of the accident and operated as nothing more than a floating dock or platform. *Id.* at 647, 196 Cal.Rptr. 164.

The *Hartford* case is unpersuasive. First, the California court in the case is interpreting an exclusion in a homeowner's policy and not whether coverage exists in an automobile or watercraft policy. As the court noted, under California law, "the fact that an accident has been found to 'arise out of the use' of a vehicle for purposes of an automobile policy is not necessarily determinative of the question of whether that same accident falls within a similarly worded exclusionary clause of a homeowner's policy". *Id.* at 645, 196 Cal.Rptr. 164. The same is true in Missouri. This is because in Missouri, insurance policies are liberally interpreted to grant rather than to deny coverage, and any ambiguous exclusionary clauses are to be strictly construed against the insurer. *Turner*, 824 S.W.2d at 21; *Universal Underwriters Ins. Co. v. Dean Johnson Ford, Inc.*, 905 S.W.2d 529, 533 (Mo.App.1995).

Respondent relies on *Farmers' Mut. Ins. Co. of Salem County v. Allstate Ins. Co.*, 341 N.J.Super. 346, 775 A.2d 514 (2001). In this case, William and Claudia Fuse took their boat onto the Salem River.

Their passengers included two children, Kareemah and Kevin Johnson, Jr. Both Kareemah and Kevin were swimming without life jackets. Kevin was pulled below the surface and drowned. The Fuses' boat was covered by a watercraft liability insurance policy providing that the insurer would "pay all sums arising from an accidental loss ... because of bodily injury or property damage resulting from the ownership, maintenance, or use of covered watercraft, boat equipment or boat trailers." 775 A.2d at 516.

The court held that the drowning accident was covered under this insurance policy. *Id.* at 518. In so holding, the court noted that the accident happened during a boat outing at a spot in the middle of the river that could only have been reached by a boat. *Id.* The children entered the water from the rear of the boat and the Fuses remained on the boat. *Id.* Therefore, "a substantial nexus existed between the use of the boat and the accident. Moreover, the Fuses could reasonably have expected that their watercraft liability policy would cover them for any swimming accident that occurred while they were using the boat." *Id.*

We agree with the result reached by the New Jersey court. We find sufficient causal nexus to conclude that respondent's injuries "resulted from" this "use" of the boat. It is reasonably apparent that when a boat is used to take people swimming in a lake, one of these swimmers may be injured by another watercraft. For these reasons, we find the insurance policy applicable to Respondents injuries. Point II is denied. The judgment is affirmed.

RAHMEYER, P.J., and PARRISH, J., concur.