Alan J. FLEMING, Appellant,

v.

**MERCANTILE BANK AND TRUST CO., Respondent.**

**No. WD 40520.**

Missouri Court of Appeals,
Western District.

Jan. 10, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 28, 1989.

Application to Transfer Denied
April 18, 1989.

Sloan R. Wilson, Kansas City, for appellant.

David F. Oliver, Kansas City, for respondent.

Before FENNER, P.J., and
MANFORD and GAITAN, JJ.

GAITAN, Judge.

This is an appeal by Alan J. Fleming, plaintiff-appellant, of the trial court granting Mercantile Bank and Trust Company's, defendant-respondent, Motion for Judgment Notwithstanding the Verdict. The jury returned a verdict in favor of plaintiff for damages for tortious interference with a partnership contract (practice of law) by defendant bank, which resulted in the termination of that contract.

Plaintiff has been a member of the Missouri bar since 1977. He was a law clerk for the partnership of Blumer and Nally, P.C., Kansas City, Missouri which specialized mostly in personal injury cases. After holding other jobs as a lawyer, plaintiff became a member of a partnership consisting of himself, and Blumer and Nally, P.C., entitled Blumer and Nally Media Partnership. The media partnership was created on January 1, 1984, and was formed to develop and handle business obtained through television advertising. Plaintiff was a one-third partner in the media partnership.

The media partnership maintained two trust accounts to handle client funds; one at defendant Mercantile Bank and Trust Company, and one at Missouri Bank and Trust Company. Plaintiff had authority to sign checks on both trust accounts. The trust account at Missouri Bank and Trust was not used by the partnership, but was opened solely because the partnership had a real estate loan at that bank.

There was a special arrangement between the media partnership and defendant whereby a settlement check or draft would be accepted as "good funds" in the trust account on the day of the deposit within certain limitations. Rebecca Elliot, vice president in the commercial lending area of defendant bank at that time, was responsible for all Blumer & Nally, P.C. accounts and the media trust account for the media partnership.

The situation which directly lead to this suit involved a settlement check in the Thomas Dowd worker's compensation case. In late June 1985, the Dowd matter had been settled and a settlement check had been issued. As routinely done, when settlements are reached, the client signed the release, endorsed the check, a settlement sheet was prepared by the secretary and the check was deposited. Plaintiff directed one of his employees to deposit the check into the media trust account. The deposit slip, dated June 24, 1985, and which appeared to be in the handwriting of plaintiff's secretary, was mistakenly deposited in the trust account at Missouri Bank and Trust Company instead of at defendant bank. The deposit was in the amount of $7,243.75. Blumer & Nally, P.C. wrote a check to Mr. Dowd from their trust account at defendant bank in the amount of $5,319.22. The check was sent Federal Express to Mr. Dowd in Texas. Between the date of deposit and July 1, 1985, plaintiff received more than one phone call from Mr. Dowd stating that his (Mr. Dowd) bank would not credit the check because there were insufficient funds to cover it. During the first call, plaintiff advised Mr. Dowd to wait one day for the deposit to clear. After a subsequent call from Mr. Dowd stating that the situation remained unchanged, plaintiff called defendant bank to try and get the problem resolved. Plaintiff was concerned about the problem because the check was written on a trust account and he was concerned about the appearance of the mishandling of client funds.

Plaintiff initially spoke with Bernice Mock, secretary to Ms. Elliot. He was informed that Ms. Elliot was out of town. Ms. Mock characterized plaintiff's tone as

irate, rude and nasty, while plaintiff stated that he was being direct. Finally, plaintiff was connected with Mr. James Goetz, assistant vice president. Mr. Goetz testified that plaintiff was rude and aggressive, and accused the defendant bank of making a mistake. Plaintiff characterized his manner as "lively" and stated that the volume of both their voices was raised. Subsequent to these conversations, the media partnership discovered that the mistake in the deposit was on their part. Upon Ms. Elliot's return, both Ms. Mock and Mr. Goetz informed Ms. Elliot of their conversation with plaintiff.

In mid-August 1985, Ms. Elliot called Mr. Blumer and told him that she had received complaints from bank personnel that plaintiff was very rude, impatient and difficult to deal with. She also conveyed plaintiff's behavior with Ms. Mock and Mr. Goetz to Mr. Blumer. Ms. Elliot specifically testified about complaints she had received from tellers concerning plaintiff's conduct. Ms. Elliot asked that someone else be the communicator or signor on the media trust account or in the alternative, that the account be moved to another bank. No other alternatives were mentioned. Mr. Blumer believes that Ms. Elliot mentioned something about improper handling of the account, but he was not quite sure. Ms. Elliot testified that she was referring to the procedure regarding deposits and the way the procedures were handled.

Mr. Blumer testified that he was concerned about the situation since the mishandling of client funds could lead to disbarment. The media partnership was dissolved by Blumer & Nally, P.C. the day after Ms. Elliot's telephone call.

Plaintiff's first three points on appeal are in regard to the elements needed for a claim of tortious interference with a contract. The last point is that the trial court erred in not granting plaintiff a new trial on the issues of actual and punitive damages.

Under Missouri law, the five elements required to be established to sustain a cause of action for tortious interference with contractual or business relations are:

1. A contract or valid business relationship or expectancy;
2. knowledge by defendant of the contract or relationship;
3. intentional interference by defendant which induces breach of contract or relationship;
4. absence of justification; and
5. resulting damages.

*Francisco v. Kansas City Star Company*, 629 S.W.2d 524, 529 (Mo.App.1981). Each and every element must be supported by substantial evidence in order for liability to exist. *Id.* The last three elements were not supported by substantial evidence in the case at bar.

### INTENT

Here, one essential element that is missing from plaintiff's proof is intent on defendant bank's part to cause the termination of the media partnership. At trial, both Ms. Elliot and Mr. Blumer testified that Ms. Elliot never suggested that plaintiff not be a partner in the media partnership. Additionally, Mr. Blumer stated:

Q. Let's use your words. Didn't she tell you then that if that weren't convenient, you all could move your accounts, your media trust account to another bank?

A. She didn't say anything about convenience. She said that the bank had decided that we would either move the account or Alan would be removed from the account.

Q. Okay. All right. She never suggested to you though that Mr. Fleming not be a partner of yours.

A. No. I didn't intend for her to have anything to do with that.

Ms. Elliot testified when asked about what alternatives she suggested to Mr. Blumer as follows:

Q. Which were?

A. I suggested that the relationship would flow more smoothly if someone other than Mr. Fleming was the one that communicated with the bank. That talked. That placed the call. That we—normally in handling a rela-

tionship, the client gives you a name and says, you know, this is the individual that whenever you have a problem or this is the person we want you to talk to.

And I suggested that perhaps it would run much smoother if someone other than Mr. Fleming was that person for us to deal with.

I alternatively suggested, I said, "However, if this is an inconvenience, I know that you have accounts at other banks, and perhaps if that were the case, maybe you might consider moving this account.

There's always the alternative to move the account to another bank."

Q. In other words, you gave Mr. Blumer two alternatives. One was to have somebody else represent the law firm in its dealing with an account which Mr. Fleming was an owner of, or move the account.

A. I'll repeat myself. I offered two alternatives—

Q. No. I think you just need to answer whether that's true or not. Is that the alternative that you gave Mr. Blumer?

A. No. Those are not. I offered two alternatives him to consider, which were the two I recited just previously. It was not to remove Mr. Fleming as a signer on the account. That was never discussed. It was who in the firm talks to the bank. Who is the communicator.

If there is no intent present, then the defendant bank's conduct is not subject to liability. The plaintiff bears the burden of proving that the defendant "actively and affirmatively took steps to induce the breach." *Tri-Continental Leasing, Co. v. Neidhardt,* 540 S.W.2d 210, 216 (Mo.App. 1976). The law requires that plaintiff show active, intentional and affirmative action on the part of the defendant to cause the termination. *Francisco,* 629 S.W.2d at 530. This Court reviews all the evidence most favorably to the plaintiff and gives the plaintiff the benefit of all reasonable inferences from the evidence. *Francisco,* 629 S.W.2d at 530. However, we cannot disregard common reason and cannot accept as true evidence that is not so under the circumstances. *Id.*

As stated in *Francisco,* "[t]he essential thing is the intent to cause the result. If the actor does not have the intent, his conduct does not subject him to liability under this rule even if he has the unintended effect of deterring the third person from dealing with the other." *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 766, Comment h (1979)).

■ Proof of a telephone call between Ms. Elliot and Mr. Blumer does not logically support the conclusion that the bank had any intent to cause the termination of the partnership. And, proof that the media partnership was terminated does not logically support the conclusion that the bank *intended* that result. A gap exists in the evidence requiring unsupported jumps from (a) proof of the telephone call to (b) proof of the termination to (c) the conclusion that the bank *intended* to cause the termination. No such evidence was before the jury to allow such a conclusion. Even assuming "an ultimatum" was given by the bank to Mr. Blumer, that "ultimatum" dealt only with bank's continued relationship with the law firm, not plaintiff's continued relationship with his law partners. Therefore, viewing all the evidence favorably to plaintiff and taking all reasonable inferences that can be drawn therefrom, there was no proof of defendant bank's *intent* to cause the termination of the media partnership between plaintiff and Blumer & Nally, P.C. Failure of such proof requires that defendant have a judgment notwithstanding the verdict.

## ABSENCE OF JUSTIFICATION

■ Plaintiff is also required to prove that defendant bank's action was without justification. *See Francisco,* 629 S.W.2d at 530. The evidence in the case at bar supports Ms. Elliot's telephone call to Mr. Blumer as being justified. Ms. Elliot had an interest in making sure that the media and trust account under her supervision operated smoothly and in accordance with established bank procedures. Ms. Elliot testified that upon being made aware of un-

pleasant incidents between plaintiff and bank personnel she called Mr. Blumer to inform him of the manner in which plaintiff handled himself in conversations with bank personnel. Her relationship with Blumer & Nally, P.C. originated with Mr. Blumer and therefore, she felt it was appropriate to call him. Plaintiff's assertion that Ms. Elliot's telephone call was unjustified is not supported by the facts. Rather, the facts prove that the call was made in response to an admitted problem between the defendant bank and plaintiff. Therefore, plaintiff also fails on this point.

### DAMAGES

■ The third element that plaintiff failed to prove was damages. The law requires proof of actual facts which present data for a rational estimate of such profits. *Brown v. McIBS, Inc.*, 722 S.W.2d 337, 340–41 (Mo.App.1986). Proof of plaintiff's past earnings or of the media partnership's past earnings, standing alone, do not support damages for loss of future earnings, profit or business.

In his amended petition, plaintiff claimed damages for loss of earnings, lost profits and business. The evidence before the jury was plaintiff's estimate of what he earned during the media partnership's existence, his estimate of what he received from the media partnership since his termination, and plaintiff and Mr. Blumer's opinion regarding the fair market value of the media partnerships as of the date of termination. Plaintiff did not present expert testimony as to the amount of lost profits.

The evidence presented was that plaintiff and Blumer & Nally, P.C. orally agreed that plaintiff would continue to work and be paid for those cases that were in the office as of the date of termination. Plaintiff and Mr. Blumer were asked their opinions regarding the fair market value of the media partnership as of the date of termination. Those opinions were not based on any profit and loss statements, balance sheets or tax return. The opinions were the estimate of the worth of existing media partnership cases open and in the office as of August 31, 1985. There was no evidence presented to the jury regarding any future cases or future earnings, profits or

business that could have come to the media partnership. Because of plaintiff's failure to prove any actual loss, defendant bank was entitled to a judgment notwithstanding the verdict. As stated in *Francisco:*

Liability under this tort cannot be predicated upon speculation, conjecture or guesswork, and no fact essential to submissibility can be inferred absent a substantial evidentiary basis. A plaintiff must generate substantial evidence supporting each and every element of this cause of action. *Tri–Continental Leasing Company v. Neidhardt*, 540 S.W.2d 210 (Mo.App.1976).

*Francisco*, 629 S.W.2d at 529. Therefore, plaintiff loses on this point.

Plaintiff's final point on appeal is that the trial court erred by failing to grant plaintiff a new trial on actual and punitive damages. In light of the fact that the required elements have not been met for a cause of action for tortious interference with a contract, this final point is moot.

The judgment of the trial court is affirmed.

All concur.