**BOEMLER CHEVROLET CO., INC., Respondent,**

v.

**Albert COMBS and Ernestine Combs, Appellants.**

No. 58057.

Missouri Court of Appeals, Eastern District, Division Five.

March 19, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 16, 1991.

Application to Transfer Denied June 11, 1991.

Roland A. Wegmann, Roya R. Hardee, Hillsboro, for respondent.

Rodolfo Rivera, Clayton, for appellants.

SIMON, Judge.

Albert and Ernestine Combs (appellants) appeal from a summary judgment making permanent a preliminary injunction enjoining them from picketing and displaying signs at Boemler Chevrolet, Inc. (respondent) in Arnold, Missouri. This is appellants' second appeal to our court. Previously, we dismissed without prejudice their appeal of a contempt citation, which had not been enforced, for violating the preliminary injunction. *See Boemler Chevrolet Co., Inc. v. Combs*, 764 S.W.2d 655 (Mo. App.1988).

On appeal, appellants assert that the trial court erred in restricting appellants' right to: 1) peacefully picket respondent's place of business because peaceful picketing is protected by the First Amendment to the United States Constitution and Article I, Section 8, of the Missouri Constitution; and 2) peacefully picket respondent's place of business because peaceful picketing for a lawful purpose is a constitutionally protected right. We affirm in part and reverse in part.

Appellant does not raise any issues as to the facts. Respondent is a Chevrolet dealership, located at 4040 Jeffco Blvd. in the City of Arnold, Jefferson County, Missouri. Its location appears to be at the intersection of Highway 61–67 (Jeffco Blvd.) and Highway 231. On or about July 17, 1986, appellants purchased a new 1986 Chevrolet Suburban vehicle from respondent. The same year appellants had purchased two other cars from respondent for a total of $40,000 and were satisfied with those cars; however, they were dissatisfied with the factory paint job on the Suburban and returned that vehicle. Appellants complained primarily about the paint job but also made complaints about a caved-in dashboard; misadjusted headlights; scratches on the back door; metallic brake rotors were replaced with nonmetallic brakes; a noise in the trunk; and nonfunctioning air-conditioning. Respondent repainted the entire vehicle and provided appellants with anoth-

er vehicle while their Suburban was being painted.

Appellants were dissatisfied with the repainting of the vehicle and asked that respondent either repaint the vehicle or take it back. Mr. Combs complained of the following defects from the repainting: 1) the paint finish was rough, not sanded down, and had holes in it; 2) there was overspraying on the left door; 3) the striping was in a different place and torn; 4) improper placement of the door handle escutcheon; and 5) paint dripped down on the inside of the door. Respondent agreed to do some touch-up work on the vehicle but told appellants it would not repaint the entire vehicle a second time. Initially, appellants refused to accept the vehicle; however, they did accept it when respondent told them they had to return the loaned vehicle or respondent would report it stolen.

In October, 1986, appellants, in prison-type uniforms, began picketing, carrying signs and demonstrating in front of respondent's place of business on the 10–foot wide parking lane of the right-of-way of Highway 61–67 and back and forth across respondent's driveways. The signs stated: "I was taken for $25,000"; "[t]o take money by deceit is stealing"; "# 1" in a yellow, lemon-shaped configuration; " '[l]ousy' repaint job on my '86 done here"; "[w]hat kind of a deal did we get?"; and "[c]heck it over good while it's still theirs".

Appellants picketed on Saturdays between 10 a.m. and 5 p.m. They placed a rotating yellow beacon on top of the Suburban which they parked on the highway right-of-way in front of the dealership. Steve Boemler, respondent's vice president, asked appellants to move their truck because "they were creating a hazard for our customers pulling in and out off the highway, pulling in and out of our dealership." One of respondent's salesmen called the police after he almost had an accident pulling out of the dealership.

The police came out twice while appellants picketed. One officer drove around the lot with respondent's salesman and then told Mr. Combs he was obstructing traffic by ten percent. The police officer did not tell appellants to leave, appellants did not receive a summons for blocking traffic and a police officer said Mr. Combs was not breaking any laws. Appellants were doing dances and jigs in the traffic lanes.

In December, 1986, respondent filed its amended petition, essentially alleging that: 1) appellants waved signs in front of vehicles traveling on the highway; 2) the picketing, slogans and activities were slanderous and libelous in fact in law per se and were defamatory, degrading and unlawful; 3) the picketing was carried out and continues to be carried out with an intent to harm respondent and its business, to interfere with its contracts and to impede the carrying on of respondent's business; 4) the picketing obstructs and interferes with the carrying out of respondent's business; 5) appellants have adequate remedies at law; 6) as a result of the picketing, demonstration, defamation, libel, slander and business interference, respondent sustained irreparable injury to its business; 7) the conduct of appellants constitutes the prima facie tort of wrongful or tortious interference with respondent's business and contracts with members of the public; 8) respondent attempted to resolve appellants' claims to no avail, expects the picketing to continue absent restraint by the court and will thereby suffer harm. Respondent sought injunctive relief, actual damages in the amount of $50,000 and punitive damages of $100,000, contending appellants' actions were willful, wanton and malicious.

On December 19, 1986, a hearing on the petition for a preliminary injunction was held. At the hearing, Mr. Combs testified appellants picketed to "[i]nform the people. Informational picketing." He also testified he offered to cease picketing if respondent would take the car back and return appellants' money. Appellants refused respondent's offer of factory arbitration with Chevrolet.

At the close of the evidence, the trial court stated: (1) "I was taken for $25,000" and "[t]aking money by deceit is stealing" is "clearly improper" and should be en-

joined; (2) "[l]ook at it while it's still theirs" is "an innocuous statement" which should not be enjoined in any way with respect to any protest of respondent; (3) "[w]hat kind of deal would we get" is a question "somewhat unrelated . . . not slander or libel" and should not be enjoined; (4) "[o]ne lousy paint job on a new '86 done here" is an expression of opinion which should not be enjoined as long as the statement appears on the vehicle itself because "the public can decide for themselves as to whether or not it's a good paint job." The trial court stated it would enjoin picketing on respondent's property and that appellants were not to enter, cross or obstruct respondent's driveways. As to whether appellants could picket on the highways which intersect at respondent's business, the trial court stated:

> . . . I cannot condone it or permit them to do so, but there is nobody in this suit that has standing to raise an objection to it . . . [I]t might be a violation of law if they have signs in their hands because there are provisions of law in the State with misdemeanor sanctions regulating the use of advertising signs along highways. And without a special permit from the State Highway Department of Transportation Commission . . . I'm going to enjoin them from using any part of U.S. Highway 61–67 or the shoulder thereof. Now if they can find some other public place to do their demonstrating they are free to do so, but they can't use "I was taken for $25,000.00. Taking money by deceit is stealing", they cannot use that . . . [Highway] 231 would be just as dangerous as 61–67. I'm going to enjoin any walking on the highway right-of-way itself, that is the lanes of traffic or the shoulders. I'm not going to permit any picketing along state or U.S. highways. That's just too dangerous in that area and I would be remiss in permitting that.

As to displaying the lemon figure, the court stated that a lemon is generally associated with "mechanical rather than cosmetic problems" and in this case the lemon was "somewhat of a misstatement". Nonetheless, the trial court determined the lemon figure is an expression of opinion and should not be enjoined as long as it appears on the vehicle. Appellants orally agreed in court to abide by the trial court's decision.

On January 6, 1987, the trial court issued its preliminary injunction, enjoining appellants from:

1. Picketing, demonstrating, sign carrying or engaging in any similar activity on any real property owned or occupied by plaintiff Boemler Chevrolet Company including real property of Boemler Chevrolet Company at or near its place of business at 4040 Jeffco Boulevard, Arnold, Jefferson County, Missouri.

2. Picketing, demonstrating, sign carrying or engaging in any similar activity as a pedestrian on the right of way of any public highway.

3. Picketing, demonstrating, sign carrying or engaging in any similar activity at places other than on Boemler Chevrolet Company owned or occupied real property and public highway rights of way in such a manner as to obstruct or restrict existing driveways and entrances to the business place of Boemler Chevrolet Company or in any manner designed or intended to impede or interfere with free flow of pedestrian or vehicular traffic to said business place.

4. Parking or permitting the standing of any motor vehicle or other vehicle on the real property or public highway rights of way as identified or described in paragraphs 1 and 2 above.

5. In connection with any picketing, demonstration and sign carrying as may be carried on by defendants, other than such picketing, demonstrating and sign carrying as is herein prohibited, no signs, placards or announcements shall be used, utilized or shown which carry thereon any statement or legend like, similar to, or intending to convey in meaning, the following:

A. "I was taken for $25,000.00."

B. "Taking money by deceit is stealing."

C. "# 1 in a yellow lemon-shaped configuration."

D. "'Lousy' repaint job on our new '86 done here", except that such statement or legend in D & C may be displayed on a sign or placard placed on the vehicle to which it refers.

(Note: The recitation of the statements or legends differs, but not in a material respect, from the statements or legends appearing in the exhibits.)

On March 9, 1987, appellants filed a counterclaim based on Section 407.560 RSMo.1986 (lemon law), seeking rescission of the sale of the Suburban on the ground the paint job was not of the same quality as a factory paint job. They also filed their answer to the amended petition and a motion to amend the preliminary injunction, stating, "[a]t the time this Court entered its Order, said Court was concerned with the public safety in that [appellants'] picketing and demonstrating may constitute a threat to said safety." Appellants asserted that since the hearing they had been unable to find any ordinances or statutes prohibiting the carrying of signs and had measured distances at or near the public highway wherein it would be safe to picket and demonstrate. Accordingly, appellants sought to have the preliminary injunction modified to permit them to picket and demonstrate at or near the public right-of-way.

Also, respondent filed a motion to amend the preliminary injunction, asserting that since the preliminary injunction was issued, appellants had been driving the Suburban up and down the highway in front of the dealership, calling attention to their activities through a flashing amber light on the vehicle, and that this activity violated the spirit of the injunction. Respondent further asserted that such activity caused traffic hazards and congestion.

A hearing was held on the motions to amend the preliminary injunction. Appellants testified that members of the public safely used the highway right-of-way in front of respondent's business. Appellants admitted to demonstrating in front of respondent's business by driving the Suburban back and forth. Appellants attached a plaster-of-paris lemon, two feet by three feet in dimension, and installed an amber flashing light on the vehicle. In response to why they picketed, appellants stated:

Boemler Chevrolet hurt me. They hurt me. They took my money. Took me. I think they defrauded me. They did not give me what I paid for. They hurt me. And that is why I'm doing this.

. . . . .

That's why I'm picketing. Not to gain my money back, to inform the people, because they refuse to give me my money back to start with.

. . . . .

My intentions are to picket in front of Boemler Chevrolet or any other place and inform the people what they have done to me.

Dale Boemler, respondent's general manager, stated that appellants drove the Suburban back and forth, honking the horn and waving pom-poms when customers were on the lot. He also testified respondent had a decline in business which he attributed to appellants' picketing. Appellants mailed folders to Steve, Floyd and Dale Boemler, General Motors, one of respondent's customers, Channel 4 television station and others. In these folders, appellants depicted the yellow lemon and complained of the paint job and other problems with the Suburban.

Albert Lee McVey, owner of an auto body repair business, testified that he and his shop manager inspected the vehicle when appellants brought the Suburban in for an estimate to repaint the vehicle. McVey testified that the paint job was acceptable and that he "couldn't do any better than what was on the vehicle".

The trial court denied appellants' and respondent's motions to amend the preliminary injunction. Later, the trial judge sustained appellants' motion for change of judge.

Subsequently, respondent filed a motion for contempt for violation of the preliminary injunction. Following a hearing, the trial court found appellants in contempt and sentenced them to ten days in jail with the execution of that sentence stayed so long as appellants did not continue to vio-

late the injunction. Specifically the court found that:

> the original order in the preliminary injunction was designed specifically to prevent the [appellants] from interfering with the business activities of [respondent] while allowing the [appellants] a limited right to speak in limited ways of their dissatisfaction with a "re-paint job" on a 1986 Chevrolet Suburban.

Appellants' appeal of the contempt citation was dismissed by our court without prejudice as premature since the sentence for the contempt order was not enforced.

Respondent amended its first amended petition by interlineation to reduce its actual damage prayer to nominal damages of one dollar. Thereafter, respondent filed a motion for summary judgment, requesting that the preliminary injunction be made permanent. Appellants filed an affidavit in opposition to the motion for summary judgment, reiterating issues raised in the preliminary injunction proceeding, stating that an employee of respondent was found guilty of damaging appellants' vehicle.

On January 22, 1990, the trial court granted summary judgment in favor of respondent, making permanent the preliminary injunction previously issued and awarding nominal damages. Appellants dismissed their counterclaim without prejudice. In its order, the trial court took notice of: 1) suggestions filed by respondent in support of its motion for summary judgment; 2) appellants' affidavit in opposition to respondent's motion; 3) arguments heard on behalf of both parties; and 4) that counsel for respondent and appellants stated in open court that upon trial of the issues joined by the pleadings neither would offer additional evidence. The trial court also noticed that it had heard evidence on the issues joined and had granted a preliminary injunction and that "now being fully apprised in the premises does find that [respondent] should have judgment and that [respondent] has sustained nominal damages". The trial court then concluded that "[i]t is therefore the JUDGMENT of this Court that the [respondent] have judgment against the [appellants] on the [respondent's] cause herein and that said judgment be and is that the Preliminary Injunction issued by this Court on December 19, 1986, be and the same is made permanent".

Paragraph 1 of the injunction prohibits picketing on property owned or occupied by respondent at or near its place of business. Paragraph 2 prohibits picketing as a pedestrian on the right-of-way of any public highway. Paragraph 3 prohibits picketing in a manner which would obstruct or restrict existing driveways and entrances to respondent's business and would impede or interfere with the free flow of pedestrian or vehicular traffic to said business. Under paragraph 4, appellants may not park or permit the standing of any motor vehicle on respondent's property or public highway rights-of-way. Finally, paragraph 5 prohibits certain statements and the manner in which they are expressed.

On appeal, appellants in their two points and arguments attack that portion of the injunction which prohibits their picketing on the right-of-way of any highway. They do not contest the remainder of the trial court's order as to the award of nominal damages, the signs, picketing on respondent's property or the blocking of the driveways. Appellants essentially argue that since they were peacefully picketing respondent's place of business for a lawful purpose, the injunction violated their free speech rights under the United States and Missouri Constitutions. Respondent argues that appellants' picketing is for an unlawful purpose, i.e., appellants were tortiously or intentionally interfering with prospective contractual relations or expectancies of the respondent, that is, respondent's automobile business.

■■■ Clearly, the First Amendment protects freedom of speech. *Bose Corp. v. Consumers Union of U.S., Inc.,* 466 U.S. 485, 503–04, 104 S.Ct. 1949, 1961, 80 L.Ed.2d 502, 518 (1984). In Missouri, this right is recognized by our state constitution. Mo. Const. Art. 1, Section 8. If picketing is done in an orderly manner, free from threats, violence and obstruction of the entrances to respondent's place of business, and the messages are not false or malicious and the purpose is lawful, the

picketing should not be enjoined. 42 AM. JUR.2d *Injunctions*, Section 74 (1969).

However, the right of free speech inherent in peaceful picketing may be denied if there is a clear showing that one of the objectives of the picketing is unlawful or that to permit peaceful picketing under the particular circumstances would cause such damage to others as to outweigh, as a matter of public policy, the desirability of permitting peaceful picketing even though to enjoin it denies one of its ingredients—free speech. *Bellerive Country Club v. McVey*, 365 Mo. 477, 284 S.W.2d 492, 500–01[4] (banc 1955). Injunction is a harsh remedy to be used sparingly and only in clear cases. *Community Title Co. v. Roosevelt Federal Sav. and Loan Assn.*, 670 S.W.2d 895, 900[7] (Mo.App.1984).

In *Downey v. United Weatherproofing Co.*, 363 Mo. 852, 253 S.W.2d 976, 980[5] (1953), our Supreme Court, recognizing the tort of tortious interference with contractual or business relations, stated:

The right of recovery for inducing a breach of a contract is but one instance of the protection which the law affords against unjustified interference in business relations. An existing contract may be a basis for greater protection, but some protection is appropriate against unjustified interference with reasonable expectancies of commercial relations even where an existing contract is lacking.

In Count II of its petition, respondent alleged that:

the conduct of said [appellants] ... constitutes a wrongful and tortious interference by [appellants] with the business and affairs of the plaintiff; constitutes a wrongful and tortious interference with the right of [respondent] to do business with its customers and members of the public and constitutes a wrongful and tortious interference with the right of contract of the [respondent] with members of the public and other of its customers and patrons.

To successfully enjoin appellants' picketing, respondent must establish by substantial evidence the following: (1) a contract or valid business relationship or expectancy; (2) appellants' knowledge of the contract or relationship; (3) intentional interference in inducing or causing breach of the contract or expectancy; (4) absence of justification; and (5) resulting damages. *Francisco v. Kansas City Star Co.*, 629 S.W.2d 524, 529[2] (Mo.App.1981). These elements cannot be shown by speculation, conjecture or guesswork, and any fact essential to submissibility cannot be inferred absent a substantial evidentiary basis. *Id.* at 529[3]. Each and every element must be supported by substantial evidence in order for liability to exist. *Id.*

To determine whether respondent made a submissible case, we review the record in a manner favorable to it. The record reveals that appellants, in prison-type uniforms, picketed on the highway right-of-way near respondent's business, primarily on Saturdays between 10 a.m. and 5 p.m. Respondent's employees testified that those were its busiest hours. On two occasions, appellants honked their horn for a prolonged period and waved a pom-pom while respondent's general manager was talking to customers on the lot. Appellants picketed in front of respondent's driveways. Respondent asked appellants to move the Suburban because respondent said appellants were creating a hazard for its customers. Appellants danced jigs in the traffic lanes. Respondent's general manager testified that he noticed a decline in respondent's business as a result of the picketing. He stated he based the decline on a loss of sales. Respondent's vice president testified that he noticed an effect on respondent's business—traffic was down—and that he based his conclusion on what the traffic was without the picketing. Mr. Combs testified that he offered to stop picketing if respondent would take the Suburban back and return appellants' money.

The evidence fails to establish intent on appellants' part to interfere with a valid business relationship or expectancy of respondent. Respondent bears the burden of proving that appellants actively and affirmatively took steps to induce third persons to refrain from purchasing automobiles from respondent. *Fleming v. Mercantile*, 766 S.W.2d 666, 669[1] (Mo.App.1989). Moreover, appellants' conduct must be a "mov-

ing cause" of the loss of potential contracts, and in so determining, we apply the "but for" test. *Tri–Continental Leasing, Co. v. Neidhardt,* 540 S.W.2d 210, 216[7] (Mo.App.1976). This concept presupposes that automobile purchasers would be ready, willing and able to form contracts with respondent and would have done so if they had not been prevented or persuaded by appellants' interference. *Id.* at 216[6]. If the evidence fails to establish that appellants have the requisite intent, their conduct does not subject them to liability even if it has the unintended effect of deterring third persons from dealing with respondent. *Fleming,* at 669[1].

The evidence fails to establish that: (1) appellants' conduct was the "moving cause" of the loss of sales; (2) "but for" appellants' conduct, third persons would have come onto respondent's premises and/or purchased automobiles from respondent; (3) third persons were ready, willing and able to purchase automobiles from respondent and would have done so if they had not been prevented or persuaded by appellants' interference; and (4) appellants actively and affirmatively took steps to induce third persons to refrain from purchasing automobiles from respondent. The evidence merely shows the respondent's business is down in relationship to its business without the picketing. No figures were given, no accounting analysis developed, and no relationship was shown between sales during the picketing compared to sales during a comparable period without picketing.

■ Proof that appellants carried signs expressing their dissatisfaction with the Suburban during respondent's busiest hours does not reasonably and logically support the inference that appellants had any intent to interfere with respondent's business expectancies. And, proof that respondent's sales and traffic were down does not reasonably and logically support the inference that appellants intended that result. Therefore, viewing the evidence and taking its reasonable inferences in a light most favorable to respondent, there is not substantial evidence of appellants' intent to interfere with respondent's business expectancies. Thus, respondent's proof

has failed to clearly establish an essential element of a tortious interference claim.

We note several statements by the trial judge that the picketing was on "busy, busy" highway rights-of-way and was "too dangerous in that area" and his concerns about the parties' standing to raise this issue. Further, the trial judge made mention of advertising on the highway rights-of-way. Respondent's pleading does not address these issues. There is no request to amend respondent's pleading to conform with the judgment. Further, the parties' briefs do not address these issues. Therefore, we do not consider them.

Accordingly, we reverse that portion of the judgment, paragraph two, enjoining appellants' picketing on any highway right-of-way and affirm the judgment in all other respects.

Judgment is affirmed in part and reversed in part.

CRANDALL and CRANE, JJ., concur.