[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: GRIFFIN HOSPITAL'S MOTION FOR SUMMARYJUDGMENT #135
This action arises out of the discharge of the plaintiff from her employment and the termination of her staff privileges at Griffin Hospital. On June 21, 1994, the plaintiff, Dr. Zeena Lobo, filed a third substituted revised complaint against the defendants, Ira Rock, Wilfredo B. Cadelina, Rama Sawhney, Griffin Anesthesia Associates, P.C. and Griffin Hospital. According to the complaint, the plaintiff and the three individual defendants constituted the anesthesiology department at Griffin Hospital. The plaintiff alleges that on or about May 1, 1987, in response to the hospital's decision to "contract" its anesthesiology services, the plaintiff and the three individual defendants formed Griffin Anesthesia Associates, P.C. (Associates) for the purpose of providing anesthesia services to Griffin Hospital. On or about May 19, 1987, the plaintiff alleges that the hospital and Associates executed an agreement entitled "An Agreement by an Independent Contractor to Serve a Hospital," which provided in part that Associates would have the exclusive right and obligation to provide anesthesia services to the patients at Griffin Hospital. Further, the plaintiff claims, pursuant to a proposed but unexecuted employment agreement, that it was understood that the plaintiff and the individual defendants would continue to be active members of the hospital's medical staff, attend medical staff meetings and conferences, accept medical staff committee assignments, and participate in similar professional functions conducted by the hospital. Pursuant to each of the foregoing agreements, the plaintiff alleges that in the event that the agreement between the hospital and Associates was not renewed or was terminated, the plaintiff's and the individual defendants' staff privileges at the hospital would immediately terminate without resort to the due process provisions of the hospital's bylaws.
The plaintiff claims that notwithstanding the satisfactory discharge of her duties and obligations, on or about February 21, 1990, defendant Ira Rock notified her that the hospital was not CT Page 5496-WWW satisfied with the quality of her services and that if Associates did not terminate her, the hospital would not renew the exclusive service agreement with Associates. On or about May 31, 1990, the plaintiff alleges that the defendants, acting in concert or combination with one another, did cause the plaintiff's expulsion and discharge from Associates. The plaintiff claims that she was discharged because she insisted at all times that those with whom he worked adhere to the highest medical standards and because she objected to the concentration of power in Ira Rock contained in Associates' shareholders agreement and in her employment agreement with Associates, both of which the plaintiff refused to sign.
The plaintiff's complaint consists of seven counts. The present motion for summary judgment is directed at counts one, two and three. In the first count, the plaintiff alleges that the acts of Griffin Hospital's agents, employees and/or officers and defendant Ira Rock constituted a tortious interference with the plaintiff's business or financial relationship with the Hospital and Associates. The plaintiff claims that such loss of business or financial expectancy was due to the fraud, negligent or intentional misrepresentation, intimidation, molestation or malicious actions of such agents employees and/or officers of the defendant hospital and of defendant Ira Rock.
In the second count, the plaintiff alleges that the aforesaid conduct of the agents, employees and/or officers of the hospital and defendant Ira Rock constituted an interference with the plaintiff's contractual rights with Associates and the hospital. The plaintiff claims that the defendants acted in bad faith, maliciously and wantonly.
In the alternative,[1] the plaintiff alleges in count three, notwithstanding the title of the exclusive services agreement, that such agreement between Associates and the hospital established an employer-employee relationship, rather than an independent contractor relationship, between Griffin Hospital and Associates. As an agent of Associates, the plaintiff claims that she also enjoys the benefits of an employer-employee relationship with the hospital, and is, thus, entitled to all the rights and privileges of an employee of the hospital, including recourse to the due process provisions of the hospital's bylaws. Despite the plaintiff's demand for due process, the plaintiff alleges that the hospital terminated her staff privileges and further caused her expulsion from Associates. CT Page 5496-XXX
As a result of the alleged wrongful acts of the defendants, the plaintiff claims that she suffered, in addition to monetary loss, stress from loss of her employment, loss of esteem, damage to her professional career and reputation, humiliation and mental anguish, physical illness and loss of her ability to enjoy life. The plaintiff now seeks compensatory damages as well as any other appropriate relief.
On February 23, 1996, Griffin Hospital filed a motion for summary judgment as to counts one, two and three of the plaintiff's third substituted and revised complaint. In support of this motion the defendant filed a memorandum of law along with affidavits by Ira Rock and Patrick Charmel and numerous other supporting documents, including certified copies of excerpts from the deposition transcripts of Ira Rock, Patrick Charmel, and Zeena Lobo. On May 6, 1996, the plaintiff filed an objection to the defendant's motion for summary judgment along with an opposing memorandum of law, an affidavit by Zeena Lobo, and other supporting documents. The defendant filed a reply memorandum on June 7, 1996.
"Summary judgment shall be rendered forthwith if the pleadings affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Citation omitted; internal quotation marks omitted.) Home Ins. Co.v. Aetna Life Casualty Co., 235 Conn. 185, 202, 663 A.2d 1001
(1995).
The first issue in the present case is whether the defendant's refusal to renew its contract with Associates, unless the plaintiff no longer provided anesthesia services to the hospital, constitutes tortious interference with the plaintiff's contractual or business relations with Associates. In its supporting memorandum, Griffin Hospital essentially argues that it is entitled to summary judgment on the plaintiff's first and second counts for tortious interference with contract and business expectations because the "plaintiff has adduced no evidence to support her allegations in her First and Second Causes of Action." Defendant's Memorandum, p. CT Page 5496-YYY 22. According to the defendant, the hospital is entitled to summary judgment as a matter of law on counts one and two "because there can be no tortious interference with business or contractual relations to which one is indirectly a party." (Emphasis in original.) Defendant's Memorandum, pp. 31-32, citing Powell v.Feroleto Steel Co., Inc., 659 F. Sup. 303, 307 (D.Conn. 1986). The hospital claims that it cannot have tortiously interfered with the plaintiff's relationship with Associates because the hospital was an indirect beneficiary of that relationship. In addition, the defendant argues that the undisputed facts establish that the hospital never stated that Dr. Lobo should be discharged from Associates, and there was no reason why Associates could not continue to employ the plaintiff as a licensed physician who rendered services to entities other than Griffin Hospital. Defendant's Memorandum, pp. 35-37, citing Fleming v. MercantileBank Trust Co., 766 S.W.2d 666, 668 (Mo.Ct.App. 1989) (plaintiff had not established the intent element of her claim for tortious interference against the bank because the bank "never suggested that plaintiff not be a partner in the media partnership.").
Further, the defendant contends that it is entitled to summary judgment on counts one and two because the plaintiff has not produced any evidence that the actions the hospital took with respect to the plaintiff were in fact tortious. According to the defendant, in order to successfully maintain her claim for tortious interference with contractual and business relations, the "plaintiff must prove that the defendant Hospital `was guilty of fraud, misrepresentation, intimidation, or molestation,' or that the Hospital acted `maliciously.'" Defendant's Memorandum, p. 37, citing Solomon v. Aberman, 196 Conn. 359, 365, 493 A.2d 193 (1985). The defendant argues that because the hospital did not willfully or wantonly violate any of the plaintiff's rights with respect to her relationship with Associates, the plaintiff's tortious interference claims in counts one and two must fail.
Finally, the defendant argues that even if the plaintiff could establish that the hospital tortiously interfered with the plaintiff's contractual and business relations with Associates and the hospital, the plaintiff still cannot prevail on counts one and two of her complaint because the hospital was legally justified in the actions it took with respect to the plaintiff. The defendant concludes that the hospital is entitled to summary judgment on counts one and two because the plaintiff has offered no evidence to indicate that the hospital tortiously interfered with the CT Page 5496-ZZZ plaintiff's alleged contractual or business relations with either the hospital or Associates.
In her opposing memorandum, the plaintiff argues that all four of the elements of a claim for tortious interference with a business or contractual relationship are present in the instant case. According to the plaintiff, the only element that is in dispute is the element of intent to interfere and that this element is satisfied "by virtue of the fact that the Hospital made it clear to Dr. Rock that the Hospital would not renew its relationship with the P.C. unless Dr. Lobo was `let go.'" Plaintiff's Memorandum, p. 21. Further, the plaintiff claims that" [u]nder the doctrine of tortious interference, `whether a defendant acted maliciously or not is a question of intent which is a question of fact.'"
(Emphasis in original.) Plaintiff's Memorandum, p. 26, citingArzonetti v. Bank of Boston Connecticut, Superior Court, judicial district of Litchfield at Litchfield, Docket No. 057615 (June 24, 1993, Dranginis, J.); Lombardi v. Marketing Corp. of America,
Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 293281 (May 23, 1994, Moran, J.). The plaintiff argues that there is adequate evidence in the record to satisfy the element of malice in that Dr. Lobo was the only doctor in the group of anesthesiologists for whom Dr. Rock kept a file documenting complaints. In addition, the plaintiff argues that there is adequate evidence in the record of intimidation by the hospital in that the other anesthesiologists "knew that if they did not succumb to the Hospital's demand that Dr. Lobo be terminated, then they would all be out of a job." Plaintiff's Memorandum, p. 27. The plaintiff concludes that questions of fact exist as to the nature and extent of the hospital's alleged tortious or malicious behavior which should be decided by a jury, and, further, that the trier of fact should determine whether the defendant's actions were justified.
The Connecticut Supreme Court "has long recognized a cause of action for tortious interference with contract rights or other business relations. . . . The essential elements of such a claim include, of course, the existence of a contractual or beneficial relationship and that the defendant(s), knowing of that relationship, intentionally sought to interfere with it; and, as a result, the plaintiff claimed to have suffered actual loss." (Citation omitted; internal quotation marks omitted.) Solomon v.Aberman, 196 Conn. 359, 364, 493 A.2d 193 (1985). "Nevertheless, not every act that disturbs a contract or business expectancy is actionable. . . . [F]or a plaintiff successfully to prosecute such CT Page 5496-AAAA an action it must prove that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously." (Citation omitted; internal quotation marks omitted.) Robert S.Weiss Associates, Inc. v. Wiederlight, 208 Conn. 525, 535-36,546 A.2d 216 (1988). "[A]n action for intentional interference with business relations . . . requires the plaintiff to plead and prove at least some improper motive or improper means. . . . [A] claim is made out [only] when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself." (Internal quotation marks omitted.) Id., 536.
The Restatement (Second), Torts § 766 (1979) provides: "One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third I person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract." This section of the Restatement has been cited with approval by the Connecticut Supreme Court. SeeHerman v. Endriss, 187 Conn. 374, 376, 446 A.2d 9 (1982). Comment (1) to § 766 provides: "A refusal to deal is one means by which a person may induce another to commit a breach of his contract with a third person. Thus A may induce B to break his contract with C by threatening not to enter into, or to sever, business relations with B unless B does break the contract. . . . The difficultquestion of fact presented in this situation is whether A is merely exercising his freedom to select the persons with whom he will do business or is inducing B not to perform his contract with C." (Emphasis added.) 4 Restatement (Second), Torts § 766, comment (1) (1979). Pursuant to comment (1), if A is merely refusing to deal with B and leaving B to make his own decision on what to do about it, "he is not liable to C for the harm caused by B's choice not to lose A's business for the sake of getting C's." 4 Restatement (Second), Torts § 766, comment (1) (1979). "On the other hand, if A . . . goes further and uses his own refusal to deal or the threat of it as a means of affirmative inducement, compulsion or pressure to make B break his contract with C, he may be acting improperly and subject to liability under the rule stated in this Section." 4 Restatement (Second), Torts § 766, comment (1) (1979).
In the present case, the plaintiff alleges that Griffin Hospital refused to renew its contract with Associates unless the plaintiff's employment with Associates was terminated. In its CT Page 5496-BBBB memorandum in support of its motion for summary judgment, the defendant essentially argues that the plaintiff has failed to adduce evidence to establish the elements of a claim for tortious interference. On a motion for summary judgment, however, "[t]he party moving for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which under applicable principles of substantive law, entitled him to judgment as a matter of law. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." (Internal quotation marks omitted.) Fogarty v.Rashaw, 193 Conn. 442, 445, 476 A.2d 582 (1984).
In the court's opinion there is evidence in the record to support the plaintiff's claim that the defendant, rather than simply exercising its freedom to select the persons with whom it will do business, used its refusal to deal as a means of affirmative inducement to cause Associates to terminate its employment contract with the plaintiff. Given the fact that the doctors who formed Associates were all former employees of the hospital, the circumstances surrounding the incorporation of Associates, and the exclusive nature of the relationship between Associates and the hospital, the hospital undoubtedly had a great deal of influence over Associates. In a February 23, 1990 letter from the hospital's attorney to Associates' attorney, the hospital stated that "one of the conditions that will be required by Griffin Hospital in any new agreement is that Dr. Zeena Lobo, an employee of Griffin Anesthesia Associates, P.C., shall have no involvement in the provision of anesthesia services to Griffin Hospital after the termination of the existing agreement. This condition, of course, has no effect on . . . Dr. Lobo's status as a shareholder/employee of Griffin Anesthesia Associates, P.C., except to the extent that she will not be allowed to provide anesthesia services to Griffin Hospital after May 31, 1990 . . . ." Defendant's Memorandum, Exhibit 16: Letter from Psarakis to Feurstein. In a prior letter dated February 21, 1990, from Ira Rock to Zeena Lobo, Dr. Rock stated: "The Hospital has suggested that if the Corporation fails to terminate you, the Hospital will not enter into a new agreement with the Corporation." Defendant's Memorandum, Exhibit 17: Letter from Rock to Lobo. Furthermore, as Dr. Rock indicated in his deposition, the reason for Dr. Lobo's termination was specifically because the hospital told him that she had to be terminated or Associates would lose its contract. Defendant's Memorandum, Exhibit B: Rock Deposition, p. 113. At the time of the vote to terminate Dr. Lobo, Dr. Rock also told the CT Page 5496-CCCC other members of the group that if they did not vote to terminate Dr. Lobo they would in effect be out of a job themselves since the hospital would not renew the contract. Defendant's Memorandum, Exhibit B: Rock Deposition, p. 245.
Under these circumstances, an issue of material fact exists as to whether the hospital was merely refusing to deal with Associates, leaving Associates to make its own decision on what to do about it, or whether the hospital was using its refusal to deal as a means of affirmative inducement, compulsion or pressure to cause Associates to terminate its contractual or business relations with Dr. Lobo. See 4 Restatement (Second), Torts § 766, comment (1). "There is a fine line between a simple refusal to deal and unlawful economic pressure intended to inflict harm on an adversary." Church of Scientology International v. Eli Lilly Co.,848 F. Sup. 1018, 1029 (D.D.C. 1994). Accordingly, Griffin Hospital has failed to demonstrate that it is quite clear what the truth is and, therefore, that Griffin Hospital's motion for summary judgment as to counts one and two of the plaintiff's complaint is denied.
In count three, the plaintiff essentially alleges that she was wrongfully discharged and that her staff privileges at the hospital were terminated without recourse to the due process provisions of the hospital's bylaws. Griffin Hospital argues in its supporting memorandum that the plaintiff has failed to adduce any evidence to support her allegations that the agreement between Griffin Hospital and Associates for exclusive anesthesia services established an employer-employee relationship, and, thus, that the plaintiff was entitled to the benefits of the due process rights contained in the hospital's bylaws. The defendant argues that the undisputed facts establish that Associates and the plaintiff were both independent contractors, not employees, of the hospital. According to the defendant, the exclusive services agreement itself, which is entitled "An Agreement by an Independent Contractor to Serve a Hospital," explicitly states: "Contractor and its agents and employees, including Licensed Physicians and CRNAs, shall beindependent contractors performing professional services forGriffin and not employees of Griffin." (Emphasis in original.) Defendant's Memorandum, pp. 45-46, quoting Exhibit 2: Exclusive Services Agreement, § 2.04.
Further, the hospital argues that it did not exercise sufficient control over Associates' employees so as to establish an employment relationship between the hospital and Associates' CT Page 5496-DDDD employees. Defendant's Memorandum, p. 48, citing Menzie v. WindhamCommunity Memorial Hospital, 774 F. Sup. 91 (D.Conn. 1991). In addition, the defendant argues that the plaintiff is equitably estopped by her representations and conduct as an independent contractor from arguing that she is an employee of the hospital and thus entitled to the due process protection of the hospital's bylaws.[2] Defendant's Memorandum, pp. 50-51, citing Palumbo v. Papadopoulos, 36 Conn. App. 799, 801, 653 A.2d 834 (1995). According to the defendant, the undisputed facts establish that the plaintiff represented to the hospital and to the world at large that she was a shareholder and member of Associates and thus an independent contractor of the hospital. The defendant contends that the plaintiff's voluntary acceptance of the benefits of her independent contractor status now imposes an obligation upon her to assume the burdens of this status. Defendant's Memorandum, p. 54.
Finally, the defendant argues that once the plaintiff's employment with Associates terminated on May 31, 1990, the hospital had no obligation to provide the plaintiff with the due process rights found in the hospital's medical staff bylaws. According to the defendant, the plaintiff's employment agreement with Associates expressly stated that if the plaintiff's employment with Associates terminated, her staff privileges would "immediately terminatewithout recourse to the due process provisions of the by-laws ofthe medical and dental staff of the Hospital," and the shareholders agreement similarly provided that the rights of the shareholders as members of the hospital staff were thus restricted. (Emphasis in original.) Defendant's Memorandum, p. 55, citing Exhibit 4: Employment Agreement, ¶ 3; Exhibit 6: Shareholder Agreement, ¶ 3. Notwithstanding the fact that the plaintiff did not sign these contracts, the defendant argues that once Dr. Lobo was terminated from her employment with Associates and she no longer belonged to that group, the hospital was legally entitled to terminate Dr. Lobo's staff privileges without due process because the hospital had an exclusive contract with Associates for anesthesia services. Defendant's Memorandum, pp. 56-57, citing Williams v. Hobbs,460 N.E.2d 287, 292 (Ohio Ct.App. 1983) (holding under similar circumstances that the hospital did not violate its own regulations when it terminated a radiologist's staff privileges because of the hospital's exclusive contract with the radiologist's former group practice corporation).
The defendant concludes that the plaintiff's claims in count three must fail "as she has not produced any evidence that either she or Associates was an employee of the Hospital or that the CT Page 5496-EEEE Hospital had any legal or contractual obligation to afford the plaintiff due process," and because the plaintiff is "estopped by her status as an independent contractor from arguing that she is entitled to any of the benefits afforded to employees of the Hospital." Defendant's Memorandum, pp. 58-59.
In her opposing memorandum, the plaintiff argues that the true nature of the relationship between the hospital and Associates, as well as all the anesthesiologists, was that of employer-employee. The plaintiff claims that there was no substantial change in the way the hospital's anesthesiology department was run after the formation of Associates. According to the plaintiff, the only real difference between the method of operation before Associates was formed, as compared to after it was formed, was that ultimately Dr. Lobo received her paycheck from Associates and Associates carried its own professional liability insurance. In addition, the plaintiff points out that she never signed any of the agreements referred to by the defendant, and claims that the group of anesthesiologists ignored all corporate formalities while Dr. Lobo was a shareholder. Accordingly, the plaintiff argues that she is entitled to all of the rights of and privileges of Griffin Hospital's bylaws, including the right to a hearing and an appeal in connection with her discharge.
The plaintiff concludes that she has pleaded and presented facts that implicate the hospital's control over Associates and its day-to-day operations, and that the issue of the hospital's authority and control over Associates are questions of fact to be determined by a jury. Plaintiff's Memorandum, p. 36.
"The legal incidents of the employer-employee relationship, on the one hand, and the employer-independent contractor relationship, on the other, are well established. . . . The fundamental distinction between an employee and an independent contractor depends upon the existence or nonexistence of the right to control
the means and methods of work." (Citation omitted; emphasis in original; internal quotation marks omitted.) Hunte v. Blumenthal,238 Conn. 146, 154, ___ A.2d ___ (1996). "[I]t is not the actual exercise of the right to control that distinguishes an [employee] from an independent contractor, but rather the employer's possession of the right to control." (Internal quotation marks omitted.) Id., 163-64.
Even where there are signed documents to the contrary, the Connecticut Supreme Court has found an employer-employee CT Page 5496-FFFF relationship. Latimer v. Administrator, 216 Conn. 237, 251,579 A.2d 497 (1990) ("The fact that the PCAs [personal care assistants] placed with the plaintiff by the registry signed an agreement that they were independent contractors' is of no moment."). "Language in a contract that characterizes an individual as an independent contractor [rather than an employee] is not controlling. The primary concern is what is done under the contract and not what it says." (Internal quotation marks omitted.) Id. "The determination of the status of an individual as an independent contractor or employee is often difficult . . . and, in the absence of controlling considerations, is a question of fact." (Citation omitted.) Id., 249.
The defendant relies in part on Menzie v. Windham CommunityMemorial Hospital, 774 F. Sup. 91 (D.Conn. 1991), for its claim that the plaintiff was an independent contractor rather than an employee of the hospital. In Menzie, the district court held that an anesthesiologist was an independent contractor rather than an employee of the hospital where the anesthesiologist received no compensation or benefits from the hospital, the hospital did not cover the anesthesiologist's malpractice insurance, and, even though the professional corporation of which the anesthesiologist was a member had a contract with the hospital, the contract did not give the hospital the necessary degree of control over rendering of services as to create an agency relationship. Id. 96. Accordingly, the court granted summary judgment in favor of the defendant hospital on the issue of the anesthesiologist's status as an independent contractor.
Although the factual circumstances in the present case are similar to those in Menzie, there are additional factors in the present case which distinguish it from Menzie and create a material issue of fact as to whether the plaintiff was an employee of the hospital. These additional factors include the hospital's involvement in the incorporation of Associates, the exclusive nature of the relationship between Associates and the hospital, and the fact that none of the agreements relied upon by the defendant in its memorandum were ever signed by the plaintiff. In addition, the plaintiff attests in her affidavit submitted in opposition to the motion for summary judgment that there was no change in the operation of the anesthesiology department at Griffin Hospital after the formation of Associates. It also appears to be undisputed that at least at one time the plaintiff was an employee of the hospital. Because the plaintiff never signed the shareholders agreement or the employment agreement with Associates, CT Page 5496-GGGG the defendant has not established if and when the plaintiff's employment with the hospital terminated and her employment with Associates began. Finally, the Connecticut Supreme court has found an employer-employee relationship even where there was a signed contract to the contrary. See Latimer v. Administrator, supra,216 Conn. 251.
Given the circumstances surrounding the incorporation of Griffin Anesthesia Associates and the exclusive nature of its relationship with Griffin Hospital, a material issue of fact exists as to whether the hospital possessed the necessary degree of control over Dr. Lobo as to create an employer-employee relationship. Therefore, an issue of material fact remains as to whether Dr. Lobo, as an employee of the hospital, is entitled to the protection of the due process provisions of the hospital's bylaws prior to the termination of her staff privileges. Accordingly, Griffin Hospital's motion for summary judgment as to count three of the plaintiff's complaint is also denied
Thompson, J.